BEDER, Appellant and Cross–Appellee, et al.

v.

CLEVELAND BROWNS, INC. et al., Appellees and Cross–Appellants.

[Cite as *Beder v. Cleveland Browns, Inc.* (1998), 129 Ohio App.3d 188.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72500.

Decided July 20, 1998.

*Kohrman, Jackson & Krantz* and *Joshua R. Cohen,* for appellant and cross-appellee.

*Jones, Day, Reavis & Pogue, Robert P. Ducatman, Dennis M. Kelly, Robert C. Weber* and *Janet L. Miller,* for appellees and cross-appellants.

---

TIMOTHY E. MCMONAGLE, Judge.

Plaintiff-appellant, Howard Beder, and the class he represents (collectively referred to as "appellants") appeal the decision of the Cuyahoga County Common Pleas Court granting summary judgment to the Cleveland Browns, Inc. and related companies (collectively referred to as the "Browns"). For the reasons that follow, we find summary judgment inappropriate on several issues and, therefore, affirm in part, reverse in part, and remand to the trial court for further proceedings.

This case involves the events surrounding the Browns' announcement in November 1995 to move the football team to Baltimore. Without undue elaboration, this announcement immediately stunned the city of Cleveland and clearly disappointed the loyal and dedicated fans. In response, both the city and several fans sought legal redress. The case *sub judice* involves the consolidated actions brought by two separate season ticket holders seeking to represent a class of season ticket holders. The first action was initiated by Howard Beder, followed shortly thereafter by the action filed by Michael Saltzman.

The trial court consolidated the two cases and later certified the consolidated case as a class action for discovery purposes only. In the complaint before this

court,[1] appellants sought to recover damages for (1) misrepresentation, (2) breach of contract, (3) promissory estoppel, and (4) violations of the Consumer Sales Practices Act. They further sought (1) a declaration that they would be entitled to renew their season tickets for the 1996 season and (2) injunctive relief preventing the Browns from selling season tickets in Baltimore.[2]

The Browns moved for summary judgment shortly after the Eleventh Appellate District decided *Stern v. Cleveland Browns Football Club, Inc.* (Dec. 20, 1996), Lake App. No. 95–L–196, unreported, 1996 WL 761163, premising its motion on many of the issues raised and decided by the *Stern* court. The trial court granted the motion, stating:

"Furthermore, since *Stern* is apparently the only Ohio case law which directly decides the issues *sub judice,* the Court is constrained to follow that holding in this case and to grant the [Browns'] motion for summary judgment as to the contract and promissory estoppel claims."

As to the remaining claims for fraud and for violations of the Consumer Sales Practices Act, the trial court likewise granted the Browns' summary judgment after determining that no genuine issues of material fact existed.

Appellants timely appeal and assign the following errors for our review:

"I. The trial court erred in granting summary judgment to the appellees.

"II. The trial court erred in certifying this lawsuit as a class action only on a provisional basis for purposes of discovery, rather than allowing the appellants to proceed to the full extent permitted by Civ.R. 23."

The Browns assign the following error on cross-appeal:

"The lower court erred in according class action treatment to this case."

## I

Under their first assignment of error, appellants raise several issues related to their challenge regarding the appropriateness of granting summary judgment to the Browns.

In reviewing a motion for summary judgment, an appellate court conducts a *de novo* review of the trial court's decision. "A court reviewing the granting of a summary judgment must follow the standards set forth in Civ.R. 56(C) * * * ."

---

**1.** While the cases were consolidated below, only Beder has appealed to this court, and, therefore, it is only the Beder complaint that is properly before this court. See Loc.App.R. 3(B)(3).

**2.** The Browns were granted summary judgment on appellants' claim for injunctive relief on March 14, 1997.

*Aglinsky v. Cleveland Builders Supply Co.* (1990), 68 Ohio App.3d 810, 814, 589 N.E.2d 1365, 1368. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

The court must construe the evidence and all reasonable inferences drawn therefrom in a light most favorable to the party opposing the motion. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Because summary judgment is a procedural device used to terminate litigation, it must be awarded with caution, resolving all doubts in favor of the party opposing the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

The burden of establishing that no genuine issues to any material fact remain to be litigated is on the party moving for summary judgment. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, 1126; *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 120, 570 N.E.2d 1108, 1113–1114. Once a party moves for summary judgment and has supported the motion by sufficient and acceptable evidence, the party opposing the motion has a reciprocal burden to respond by affidavit or as otherwise provided in Civ.R. 56(C), setting forth specific facts explaining that a genuine issue of material fact exists for trial. *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031–1032; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. A motion for summary judgment forces the nonmoving party to produce evidence on all issues for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. It is the moving party, however, who bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 275–276.

## A. The *Stern* Decision

Appellant contends that the court erroneously felt compelled to follow the decision of *Stern v. Cleveland Browns Football Club, Inc., supra,* an unreported decision from the Eleventh Appellate District.

In that case, a disgruntled season ticket holder, seeking the return of the cost of his season tickets, brought a small claims action for breach of contract and fraudulent inducement. Specifically, the plaintiff in that case claimed that he had been fraudulently induced into purchasing tickets for the 1995 season and had been prevented from exercising his right of first refusal for the purchase of season tickets for the next season. The plaintiff further claimed that he was entitled to a refund for the three games played after the Browns announced the move to Baltimore because of the "diminished value" he received from watching a less-than-entertaining Browns' football game.

Finding that a contract existed, the trial court awarded damages in an amount calculated to compensate the plaintiff for the diminished value of the tickets, plus interest. The court did not find any merit to the plaintiff's claim for fraud, and he did not appeal this ruling. The Browns, however, appealed, and the Eleventh District reversed. While agreeing that a contract existed, the *Stern* court found no merit to the plaintiff's claim for breach of contract based on the right of first refusal or because of diminished value.

█ Appellants correctly apprise this court that an unreported decision of a sister appellate district is not controlling authority in this court and that a court is not "constrained" to follow that decision as the trial court claimed to be. S.Ct.R.Rep.Op. 2(G). Nonetheless, the decision can be considered persuasive authority from which this court, or any other court, can premise its decision in whole or part.[3] *Id.*

### B. Breach-of-Contract and Promissory Estoppel Claims

█ As the Eleventh Appellate District determined, we likewise find that the season ticket package, such as that purchased by appellants, constituted a contract because all the requirements of a contract were present. What remains to be decided is whether there were genuine issues of fact regarding whether that contract was breached.

█ As a threshold matter, because we find that an express contract exists between the Browns and appellants, appellants' remedy is for breach of that contract, if that can be substantiated. Appellants, therefore, are precluded from seeking alternative relief on the theory of implied contract or promissory estoppel. *Cincinnati v. Cincinnati Reds* (1984), 19 Ohio App.3d 227, 230, 19 OBR 378, 381–382, 483 N.E.2d 1181, 1184–1185; *Freeman v. Montessori School*

---

**3.** The Browns assert that the *Stern* decision is merely unpublished as of this date. If, by implication, the Browns mean to state that when the decision is published, it will then be authoritative, this is an incorrect assumption. Even if the decision is chosen for publication, it will remain only as persuasive authority in this judicial district. S.Ct.R.Rep.Op. 2(G)(2).

*of Bowling Green, Inc.* (Sept. 2, 1994), Wood App. No. 93WD098, unreported, 1994 WL 476025, at 7.  Thus, to the extent that the trial court granted judgment in the Browns' favor as a matter of law on appellants' claim for promissory estoppel, summary judgment was appropriate.

Appellants' claim for breach of contract is twofold, namely, that (1) the value of their season tickets declined after the announcement so much so that the remaining three games played during the 1995 season were not of the caliber of an NFL football team and (2) they were denied the right to exercise the right of first refusal purchased as part of their season ticket package.

■ Insofar as their breach-of-contract claim is based on the diminished value of their season tickets, we agree with the *Stern* court and find that claim without merit.  That the Browns performed poorly after the announced move to Baltimore cannot serve as a basis from which to find that the Browns breached their contract with season ticket holders.  See *Seko Air Freight, Inc. v. Transworld Systems, Inc.* (C.A.7, 1994), 22 F.3d 773; see, also, *Strauss v. Long Island Sports, Inc.* (1978), 60 A.D.2d 501, 510–511, 401 N.Y.S.2d 233, 238.  To allow recovery under such a theory would enable any ticket holder not satisfied with the performance of whatever entertainment the ticket procured to seek a refund for such a subjective and unreasonable response.  As the *Seko* court stated:

"Consider too the purchaser of season tickets for a baseball team.  That the Chicago Cubs turn out to be the doormat of the National League would not entitle the ticket holder to a refund for the remaining games, any more than the star tenor's laryngitis entitles the opera goer to a refund when the understudy takes over the role."  *Seko, supra,* 22 F.3d at 774.

Thus, it was not error for the trial court to grant the Browns summary judgment on this issue.

Insofar as their claim for breach of contract pertains to the inability to exercise their right of first refusal, however, we find differently.

■■ A right of first refusal is a preemptive right requiring the owner to offer the property first to the holder of the right.  *Stratman v. Sheetz* (1989), 60 Ohio App.3d 71, 73, 573 N.E.2d 776, 778.  It differs from an option because the grantee of a right of first refusal cannot compel the owner to sell the property as the grantee can with an option.  *Id.*  See, also, *Sun Refining & Marketing Co. v. Spelman* (Dec. 17, 1992), Cuyahoga App. No. 63164, unreported, 1992 WL 390216, at 17; *Leb v. Hoover Co.* (Dec. 28, 1982), Stark App. No. 5717, unreported, 1982 WL 5637, at 8.  Thus, the Browns correctly state that the right of first refusal is not triggered unless the seller desires to sell the property associated with the right.

■ Nonetheless, because the right of first refusal is conditioned upon the seller's desire to sell, appellants argue that the Browns cannot avoid liability under the contract when they themselves precluded appellants from exercising this right by moving the team to Baltimore. In support of this argument, appellants rely on *Suter v. Farmers' Fertilizer Co.* (1919), 100 Ohio St. 403, 126 N.E. 304, for the proposition that when the enforceability of a contract "depends upon a condition precedent, one cannot avoid his liability by making the performance of the condition precedent impossible, or by preventing it." *Id.* at 411, 126 N.E. at 306; see, also, *Werner v. Biederman* (1940), 64 Ohio App. 423, 428, 28 N.E.2d 957, 959. While appellants cite no Ohio case law that supports application of this principle to rights of first refusal, they do cite decisions of other jurisdictions that do support such application. See *Bailey v. Meister Brau, Inc.* (N.D.Ill.1973), 378 F.Supp. 869, 878, affirmed (C.A.7, 1976), 535 F.2d 982; *Wilson v. Whinery* (1984), 37 Wash.App. 24, 28, 678 P.2d 354, 357.

We are compelled to depart from the reasoning set forth in *Stern* and find that, while the right of first refusal is conditioned upon the Browns' desiring to sell season tickets for the 1996 season and despite the undisputed fact that the Browns did not do so, the Browns destroyed the opportunity to exercise this right when the only reason they did not offer the tickets for sale was because of the team's decision to move to Baltimore. Thus, we find that the trial court erred in determining, as a matter of law, that the Browns were entitled to summary judgment on this issue to the extent that appellants bargained for a season ticket package that included a right of first refusal to purchase the next season's tickets and they were prevented from exercising that right because of the conduct of the Browns.

## C. Consumer Sales Practices Act

■ In support of their motion for summary judgment, the Browns maintained that they were entitled to summary judgment on appellants' claim for violations of the Consumer Sales Practices Act, yet they failed to assert any argument in support. On the contrary, the Browns rather summarily asserted that appellants could "come forward with no evidence" to support their claim for violations under the Act.

This conclusory statement is insufficient under *Dresher v. Burt,* 75 Ohio St.3d at 293, 662 N.E.2d at 273–274; see, also, *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164, 1170–1172. Contrary to the Browns' assertions during oral argument that they had satisfied their burden by advancing and supporting their argument with references to evidence of the type listed in Civ.R. 56(C), this court is unable to find anywhere in the Browns' briefs supporting their motion for summary judgment such an argument or evidence in support thereof.

Because the Browns have failed to satisfy their initial burden on this issue, the motion for summary judgment should have been denied to that extent. *Id.* Consequently, the trial court erred in granting summary judgment to the Browns on appellants' claim for violations of the Consumer Sales Practices Act.

## D.  Fraud

In their motion for summary judgment, the Browns argued that they were entitled to judgment in their favor because the Browns did not misrepresent the status of the Browns eventual move prior to appellants' purchase of their season ticket packages.  Attached to the motion were excerpts of the deposition of Browns' majority owner, Art Modell, wherein he testified that his first meeting with officials representing the city of Baltimore was in September 1995, several months after appellants purchased their tickets.

■ The elements of fraud are (1) a false representation concerning a fact, (2) knowledge of the falsity of the representation or utter disregard for its truthfulness, (3) intent to induce reliance upon the representation, (4) justifiable reliance upon the representation, and (5) injury proximately caused by the reliance. *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 711–712; see, also, *Mussivand v. David* (1989), 45 Ohio St.3d 314, 322, 544 N.E.2d 265, 273; *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 73, 23 OBR 200, 203–204, 491 N.E.2d 1101, 1105–1106.

■ In their brief opposing the motion, appellants rely on two newspaper articles, which predate the purchase of their 1995 tickets, wherein Modell was quoted as unequivocally stating that he would not move the team as long as his family owned it.  Appellants claimed they relied on these statements in purchasing their season ticket packages.  The Browns, on the other hand, maintain that the statements were conditional and that the team was always in a precarious position as far as moving.

The statements relied upon stated, in part:

"Art Modell, in an interview last week with Plain Dealer editors and reporters, vowed the team will stay in Cleveland as long as his family owns it.  And he said the franchise is not for sale, either.

"Art Modell's no-sale vow was conditional.

" 'The team's not for sale.  However, if I find it economically impossible for me to compete, not only with 29 other teams in the NFL but with the Cavaliers and the Indians for those disposable dollars, then the story might change,' Modell said."

Later in the same article, Modell is quoted as further saying:

" 'I'm not about to rape this city as others in my league and others have done (to other cities),' he said.

" 'You'll never hear me say, "If I don't get this I'm moving." You can go to press on that one. I couldn't live with myself if I did that,' he said."

■ The Browns contend that statements appearing in a newspaper article cannot serve as a basis of a fraud claim because it would be unfair to draw an inference of fraud from a statement appearing in a news article over which defendant had less than complete control. See *Schwartz v. Novo Industri, A/S* (S.D.N.Y.1987), 658 F.Supp. 795, 799. While the Browns may have had less than complete control over what the reporter wrote, they did have control over what Modell said, and those statements may properly serve as a basis for appellants' fraud claim. See *In re Columbia Sec. Litigation* (S.D.N.Y.1990), 747 F.Supp. 237, 245. Moreover, the facts and circumstances surrounding this case compel this court to take cognizance of the conventional means of communication between a sports franchise and its season ticket holders. We recognize, as the Browns apparently cannot, that it would be unreasonable to expect the Browns' owners and managers to communicate directly with each and every season ticket purchaser and state their intentions regarding the future of the team. To the contrary, as is customary in the industry, the owners and managers communicate through the media, both as to the team's performance and its anticipated future, with the hope of inducing potential purchasers to purchase tickets and season ticket packages. This being the case, we decline to discount the significance of the news articles insofar as they are used to attempt to satisfy the reliance element of appellants' fraud claim.

Therefore, appellants claim that the representations contained in the news articles were false and that the Browns knew they were false when made. Further, they contend that the statements were made with the intent to induce potential season ticket holders, such as appellants, to purchase tickets and that they did so to their detriment. The Browns, on the other hand, contend that the statements were true when made and that the statements themselves were conditional. We disagree.

Our understanding of the statements relied upon by the appellants is that it was the *sale* of the team that was conditional, not the move. In opposition to the Browns' motion, appellants appended a document entitled "Notice and Statement of Reasons of the Cleveland Browns Supporting Relocation of Franchise to Baltimore" submitted to NFL Commissioner Paul Tagliabue on November 4, 1995. In that document, the Browns outline a long-standing struggle with the city on the viability of the Browns' remaining in Cleveland. This document, in conjunction with the news articles stating the opposite, creates an issue of fact precluding summary judgment.

Thus, we find that summary judgment was inappropriately granted on appellants' claim of fraud.

Consequently, appellants' first assignment of error is well taken in part and is therefore sustained to the extent discussed above.

## II

■ Appellants' second assignment of error and the Browns' cross-assignment of error are related and will be discussed together. Appellants contend that class action status should have been granted in full and not merely for discovery purposes, while the Browns maintain that class action status was erroneously conferred in the first instance.

■ The class action is an invention of equity, designed to facilitate adjudication of disputes involving common issues between multiple parties in a single action. *Planned Parenthood Assn. Of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 62, 556 N.E.2d 157, 163–164. Civ.R. 23 governs class actions and provides:

"(A) **Prerequisites to a class action.** One or more members of a class may sue * * * as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims * * * of the representative parties are typical of the claims * * * of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Additionally, the proposed class must satisfy the requirements of section (B) of this rule, which provides:

"An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

"(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

" * * * *

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution * * * of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."

A trial court has broad discretion in determining whether a class action may be maintained, a determination that will not be disturbed absent an abuse of that discretion. *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 70, 694 N.E.2d 442, 447. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

There is no specified numerical limit that must be satisfied in order to maintain a class action. See *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 97, 521 N.E.2d 1091, 1096–1097. Here, appellants presented evidence that there were in excess of forty thousand season ticket holders constituting the potential class. It is safe to say that a class with more than forty thousand potential class members sufficiently satisfies the numerosity requirement. See, *e.g., Hamilton,* 82 Ohio St.3d at 75, 694 N.E.2d at 450–451.

Courts have generally given permissive application to the commonality requirement of Civ.R. 23(A)(2), which has been construed to require a "common nucleus of operative facts." *Id.* at 77, 694 N.E.2d at 451–452; see, also, *Marks v. C.P. Chem. Co.* (1987), 31 Ohio St.3d 200, 202, 31 OBR 398, 400, 509 N.E.2d 1249, 1252–1253. Here, the claims of potential class members all revolve around the purchase of season tickets in relation to the departure of the Browns from Cleveland. Thus, this requirement has been satisfied.

Next, the claims of the representative, Beder, must be typical of the claims of the class. It is this requirement that the Browns claim appellants cannot satisfy because the proof necessary to substantiate the claims of the class members, especially the fraud claims, might not be the same as Beder's. See *Strauss v. Long Island Sports, Inc.* (1978), 60 A.D.2d 501, 401 N.Y.S.2d 233. While we are cognizant of this distinction, the trial court provisionally certified the class for discovery purposes only, with specific direction for appellants to ascertain whether "clear classes or subclasses exist and whether their claims should be heard."

Upon further discovery, it may very well be determined that some claims are not suitable to be maintained as a class action and the trial court can take appropriate action at that time. It is premature at this juncture, however, to find that provisional class action status for the purpose of discovery only is inappropriate.

Last, under Civ.R. 23(A), Beder must fairly and adequately protect the interests of the class, considering both the adequacy of the representative and the adequacy of counsel. *Warner*, 36 Ohio St.3d at 98, 521 N.E.2d at 1097–1098. We find nothing unreasonable about the trial court's decision finding that Beder and his counsel could adequately represent a class of season ticket holders.

For the same reasons we found Civ.R. 23(A)(3) satisfied, we likewise find that Civ.R. 23(B)(3) is satisfied. Again, we remind the Browns that the ruling for class action status is for discovery purposes only. If during discovery it comes to the court's attention that maintaining the action as a class is inappropriate, the court can then fashion an appropriate response.

We find no abuse of discretion in granting provisional class action status to appellants for the purposes of discovery, nor do we find that the trial court abused its discretion in failing to grant full class action status to appellants. Consequently, appellants' second assignment of error and the Browns' cross-assignment of error are both not well taken and are overruled.

### III

In conclusion, we find that the trial court inappropriately granted summary judgment to the Browns on appellants' claims for (1) breach of contract, as it pertains to the right of first refusal, (2) fraud, and (3) violations of the Consumer Sales Practices Act. To the extent that appellants sought relief for breach of contract because the entertainment value of the football games declined after the Browns announced the move to Baltimore, summary judgment was appropriately granted. The same is true for appellants' claim based on promissory estoppel. Lastly, the trial court did not abuse its discretion in granting provisional class certification for the purpose of discovery.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for proceedings not inconsistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

JAMES D. SWEENEY, J., concurs.

DYKE, P.J., concurs in judgment only.