BLUMENTHAL et al. Appellants,

v.

MEDINA SUPPLY COMPANY, Appellee.

[Cite as *Blumenthal v. Medina Supply Co.* (2000), 139 Ohio App.3d 283.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75768.

Decided May 15, 2000.

*Dworken & Berstein Co., L.P.A., Patrick J. Perotti, Howard S. Rabb, Dean M. Rooney* and *Amy Trejbal,* for appellant.

*Jones, Day, Reavis & Pogue, David A. Kutik, Marc Alan Silverstein* and *Paula Batt Wilson,* for appellee.

JAMES D. SWEENEY, Judge.

Plaintiffs-appellants Mark Blumenthal et al. appeal from the decision of the trial court that granted defendant-appellee Medina Supply Company's February 3, 1998 motion to decertify the class action status of the case. For the reasons adduced below, we reverse the decertification of the class action and remand for further proceedings.

A review of the record on appeal indicates that the underlying action involves concrete that failed after being installed in approximately one thousand driveways in northern Ohio in 1993 by a variety of contractors. The concrete was manufactured and supplied by defendant-appellee Medina Supply Company through ten of its mixing plants in the area and installed by dozens of different contractors. Concrete is basically composed of Portland cement, coarse aggregate (*i.e.*, stones or rocks of particular sizes pursuant to the specifications), fine aggregate (*i.e.*, sand), water, and, if applicable, various supplemental materials (also known as admixtures, such as fly ash). The coarse and fine aggregate used in the concrete was supplied by ten different suppliers. The defects in the driveways included concrete that was cracking, spalling, flaking, pitting/popping-out, peeling and/or scaling.

The original complaint was filed on May 12, 1994. On May 24, 1994, prior to the commencement of discovery and without the presentation of any evidence, the trial court conditionally granted plaintiffs' motion for class certification pursuant to Civ.R. 23(B)(3). The conditional certification class consisted of "all persons,

firms or entities who were supplied defective concrete since January 1, 1993 by Defendant Medina Supply Company for residential installation."[1]

On January 14, 1997, the originally assigned trial court judge recused herself and the case was transferred to the docket of the present jurist. Thereafter, discovery, which had been commenced before the originally assigned judge, continued, albeit in a very contentious and labored fashion by the parties.

On June 23, 1997, the trial court ordered that the issue of class certification would be dealt with after discovery had been completed, at which time the parties could submit motions regarding certification and the court would conduct a hearing.

On January 14, 1998, defendant-appellee filed a memorandum in support of defendant Medina Supply Company to decertify class with an accompanying appendix. Plaintiffs-appellants' brief in opposition to decertification was filed on January 30, 1998. Thereafter, defendant-appellee filed a reply brief, with supplemental appendix, on February 2, 1998. On February 3, 1998, the trial court conducted an oral hearing on the motion to decertify. Plaintiffs argued that the common defect was excessive water in the design mix,[2] compounded by additional water added to the mix by the defendant's driver at the job site at the request of the contractor. Plaintiffs argue that excessive water in the mix weakened the concrete and caused the concrete to fail prematurely, as evidenced by the presence of scaling in the sampling group assembled by defendant's experts (a group of fifty driveways culled from around the northern Ohio area; this sample group included driveways poured with concrete from Medina and other concrete suppliers). Defendant argued that, in addition to excessive water, multiple factors outside the control of the defendant (including, but not limited to, the following: weather, humidity, postinstallation use and/or abuse of the driveway

---

1. This conditional class certification pursuant to Civ.R. 23(C)(1) was appealed by defendant-appellee on June 17, 1994. That appeal was dismissed for lack of a final appealable order in *Blumenthal v. Medina Supply Co.* (Jan. 30, 1995), 100 Ohio App.3d 473, 654 N.E.2d 368, discretionary appeal to the Supreme Court of Ohio not allowed in (May 31, 1995), 72 Ohio St.3d 1530, 649 N.E.2d 839. We note that effective July 22, 1998, an order that determines whether an action may, or may not, be maintained as a class action is a final appealable order. See R.C. 2505.02(B)(5).

2. Each design mix is made in a batch of no more than ten cubic yards. Plaintiffs argued that the water to cement ratio exceeded 0.45. However, this ratio is not a maximum standard. It is only a recommended safe practice according to Mr. Klieger, who chaired Committee 201 for the American Concrete Institute and wrote the report which discussed the 0.45 water/cement ratio. See affidavit of Mr. Klieger. See, also, report of Mr. Klieger titled "Concrete Driveway Performance in the Cleveland Area—Reply to William Brewer," which discusses at length the use of water/cement ratios in the testing of concrete and concludes, at 11–17, that: (1) exceeding the 0.45 water/cement ratio does not guarantee the failure of the concrete; and, (2) concrete permeability does not increase dramatically until the water/cement ratio exceeds 0.53.

by the homeowner, improper site preparation or finishing techniques by the installing contractor, improper handling of the concrete by the contractor, and lack of proper curing) are present that dispel a finding of a common defect with the driveways and that, if a contractor asked the driver to add additional water to the mix at delivery, then the contractor is to blame for the flaws that developed in the product. Defendant also offered expert evidence that demonstrated that scaling can be caused by six factors, not just by excessive water in the mix.[3] The trial court, in an involved opinion, granted the motion to decertify on November 30, 1998. In this order the trial court determined that the following class action elements were not satisfied: (1) commonality [Civ.R. 23(A)(2) ], (2) predominance [Civ.R. 23(B)(3) ], and (3) superiority [Civ.R. 23(B)(3) ].

With regard to the element of commonality, the trial court stated:

"Without addressing the merits of either parties' [sic] case, and based on changed facts and/or circumstances that have come to light via the discovery process and after the Trial Court's Conditional Certification Order, this Court notes that individualized issues, including but not limited to (1) the existence and use of many different design mixes composed of different ingredients, (2) the inherent variability of placing, finishing and curing procedures utilized by a large number of different contractors, (3) the numerous and distinct driveway defects involved in this case, and (4) each individual homeowners' [sic] post-placement actions, all lead this Court to rationally conclude that there does not exist a common nucleus of operative facts forming a common basis for liability against this Defendant.

"While this Court acknowledges both that (1) the Civ.R. 23 commonality requirement is generally given a permissive application and is to be liberally construed *at early stages of the proceedings*, [fn. 25] and that (2) individualized issues are properly analyzed pursuant to the Civ.R. 23(B)(3) requirements of

---

3. Dr. David Lankard, who had been retained by the Ohio Department of Transportation to investigate the concrete driveway failures, and later retained as an expert for plaintiffs-appellants, stated in his report to ODOT, at page 81:

"* * *[U]nder some conditions, even good quality concrete can show distress. Factors that can affect the extent and severity of scaling distress include,

"1. Quality of the cement paste phase

"2. Aggregate quality

"3. Quality of the entrained air system

"4. Construction practices that affect the quality of the concrete in the wearing surface

"5. Factors that affect the strength, porosity, and moisture saturation conditions at the time of first freezing (date of placement; use of flyash) [sic]

"6. Environmental factors including the severity of the winter (number of freeze/thaw cycles) and the extent of use of deicing salts."

These conclusions were repeated by Dr. Lankard in his defense deposition of July 14, 1997.

predominance and superiority, the discovery process has revealed that there exists only a facially common issue in that many driveways failed, albeit for a variety of different reasons and as a result of numerous and inherently variable factors." (Footnote 25 and italicization in the original.)[4]

With regard to the element of predominance the trial court stated:

"In *Cope v. Metropolitan Life Insurance Company* (July 29, 1998) [82 Ohio St.3d 426, 429–430, 696 N.E.2d 1001, 1004], 1998 Ohio App. LEXIS 2125, S.Ct.No. 97–567, the Ohio Supreme Court recently noted as follows with respect to the 'predominance' requirement:

" 'It is now well established that "a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Lockwood Motors, Inc. v. Gen. Motors Corp.* (D.Minn.1995), 162 F.R.D. 569, 580.'

"* * *

"As explained in the 1966 Advisory Committee Notes to Fed.R.Civ.P. 23(b)(3): '[s]ubdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results * * *. The court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action * * *. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class

---

4. Footnote 25 in the decertification order states:

"Without reaching the merits of this case, this Court observes that, despite Plaintiffs' reliance on their 'design defect' theory, they simultaneously concede both that (1) Defendant's design mixes have been used continuously from 1988 until 1994, and that (2) between 1988–1992, there was not the 'explosion' of driveway failures that there were during the 1993–1994—a year in which, as Plaintiff acknowledges, 'it was a more severe winter than we've had for 20 years.' See Decertification Hearing Tr., pp. 82–83. This Court will further examine the above facts and admissions when analyzing the Civ.R. 23(B) requirements of predominance and superiority, *infra*."

The "design mix" is an industry term for the batch of concrete which a concrete supplier makes at a mixing plant pursuant to a contractor's specifications. This mix is placed into a truck at the mixing plant, which transports the mix to the job site for installation. In 1993, defendant offered and sold in excess of fifty (50) different residential use design mixes. See affidavit of Mr. Gregory Colvin dated February 2, 1998.

action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.'

"After thoroughly reviewing the briefs submitted by counsel, the decertification hearing transcript, and the entire case file, it is this Court's opinion that there does not exist in this case the type of 'generalized evidence' that will have the potential to prove or disprove Plaintiffs' claims on a simultaneous, class-wide basis. While acknowledging that 'a wide variety of claims may be established by common proof in cases involving * * * the use of standardized procedures and practices,' [fn. 33][5] this Court likewise notes that other claims are not suitable for resolution in the class action context, especially when resolution of the claims presented necessarily relies on significant individualized determinations.

"In rendering this decision, this Court remains conscious of the fact that it is not called upon to ascertain the merits of the underlying case at this point in time. At the same time, however, this Court recognizes that performing a 'rigorous analysis' of the Civ.R. 23(B)(3) predominance requirement necessitates a scrutiny into the existence and intensity of 'common' versus 'individual' issues in order that a rational and informed judgment may be made.

"Based on circumstances that have changed and facts that have come to light via the discovery process and subsequent to the Trial Court's conditional grant of class certification, it is obvious to this Court that individualized issues predominate over common issues. Although a facially common issue exists in that several driveways utilizing Defendant's concrete failed, albeit for a variety of potential reasons, this Court must balance the existence of this common fact with the greater number of particularized and fact-intensive questions affecting individual members of the class on a driveway-by-driveway basis. As even a cursory review of this Court's docket amply illustrates, these individualized issues have already prevented the Trial Court, this Court and the litigants from realizing the beneficial economies of time, effort and expense that are contemplated by Civ.R. 23(B)(3). It is further the opinion of this Court that any economy that could be achieved by continued class treatment is substantially offset by the inefficiencies of time, effort and expense that will necessarily have to be spent litigating the numerous individualized issues which predominate. [fn. 34.] [6]

---

5. Footnote 33 states: "Accord *Cope, supra,* at 437, 696 N.E.2d at 1009."

6. Footnote 34 states:

"Accord *Ilhardt* [*v. A.O. Smith Corp.* (1996), 168 F.R.D. 613, 619] ('In complex cases where no one set of operative facts establishes liability, where no single proximate cause applies to each potential class member and to each defendant, and where individual issues outnumber common issues * * * the district court should question the appropriateness of a class action for resolving the controversy')."

"The evidence before this Court demonstrates the extent to which it is necessary to scrutinize the facts and circumstances surrounding each individual and distinct driveway installation process and resulting defect(s), [fn. 35] [7] as well as individualized defenses that Defendants may have with respect to each individual class member. [fn. 36.] [7] Indeed, the driveways at issue in this case have faced a myriad of different problems, including but not limited to, flaking, spalling, peeling, and cracking. See Lankard Tr. 27, 32–33, 106; Perenchio Tr. 62–75, 162, 176–77; Brewer Tr. 141–42; Defendant's Reply Brief in Support of Motion for Sanctions, Exhibits 4–8; 12. [fn. 37.] [7] Moreover, the method of installation and the conditions under which each driveway was installed and/or cured differs substantially on a driveway-by-driveway basis. *Id.*; See, also, Plaintiffs' Brief Opposing Motion to Decertify, pp. 8–9 (acknowledging that 'concrete is part of a multiset process involving manufacturing, installation and use')."

With regard to the element of superiority the trial court stated:

"In addition to rigorously analyzing the predominance requirement, this Court must also determine whether a class action is the 'superior' method of adjudication. [fn. 40.] [8] As the Supreme Court of Ohio noted in *Schmidt* [*v. Avco Corp.* (1984), 15 Ohio St.3d 310, 314, 15 OBR 439, 442, 473 N.E.2d 822, 825]:

---

**7.** Footnote 35 states:

"This would clearly necessitate an individualized scrutiny into numerous sub-issues, including but not limited to: (1) the weather conditions under which each driveway was poured, (2) the number and intensity of water additions made at each site by a significant number of different contractors, each of whom presumably engage [*sic*] in different 'finishing' practices and procedures under different weather conditions, (3) the specific design mix of Defendant, of which Plaintiffs concede there are many, that was used on each driveway, and (4) the distinct problems, and varying intensities thereof, encountered in each individual Plaintiff's driveway [*i.e.*, flaking, spalling, peeling, pitting, cracking, etc.], and (5) the existence of contractual defenses potentially available to Defendant based on contracts executed by class members and various contractors. See Defendant's Reply Brief in Support of Motion for Sanctions, Exhibits 4–8; 12–21."

Footnote 36 states:

"For example, as illustrated in Defendant's Motion for Summary Judgment against Joseph Demio, at least one class representative, and perhaps numerous additional class representatives and/or members, has executed what purports to be a release of all claims against the contractor who installed the driveway. Without commenting on the viability of said release as it relates to Defendant, it is worth noting that, if this case were to continue in the class action context, this Court would be called upon the [*sic*] interpret the viability and enforceability of many similar and yet distinct releases executed by a multitude of contractors."

Footnote 37 states:

"See also *supra*, at fn. 24 and accompanying text."

**8.** Footnote 40 states:

"See [*Shaver v. Std. Oil Co.* (1990), 68 Ohio App.3d 783, 799, 589 N.E.2d 1348, 1358], citing *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation* (C.A.9, 1982),

" 'To aid courts in determining whether there has been compliance with the Civ.R. 23(B)(3) requirements of predominance and superiority, *i.e.*, requirements that demonstrate the utility and propriety of employing the class action device, the drafters listed four factors which they deemed to be particularly relevant: "(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of the class action.' " [fn. 41.] [9]

"In addressing both the predominance and the superiority requirements embedded in Civ.R. 23(B)(3), a frequently cited commentator has repeatedly noted that '[t]he key should be whether the efficiency and economy of common adjudication outweigh the difficulties and complexity of individual treatment of class members' claims.' [fn. 42.] [10]   This Court has already weighed the foregoing considerations in conjunction with the 'predominance' analysis, *supra*, and has concluded that the high concentration of complex individualized issues undermine the continued suitability of the class action device.   Indeed, the predominance of individualized issues significantly augment [*sic*] the difficulties that would likely be encountered in the event that the instant case continued to proceed in the class action context. [fn. 43.] [11]

"Based on the foregoing analysis, this Court finds the superiority requirement to be lacking, such that decertification is warranted and justified."

Appellants' sole assignment of error states:

---

691 F.2d 1335 ('[i]f the court finds that common questions do predominate, it must still determine that a class action is the superior method to settle the controversy')."

**9.**   Footnote 41 states: *"Schmidt, supra* at 314, 15 OBR at 442–443, 473 N.E.2d at 825–826."

**10.**   Footnote 42 states:
   "Miller, An Overview of Federal Class Actions:  Past, Present and Future (2 Ed.1977), at 49; Accord *Warner* [*infra*], at 96 [521 N.E.2d at 1095–1096];  *Shaver, supra* at 796 [589 N.E.2d at 1356–1357]."

**11.**   Footnote 43 states:
   "Accord *Schmidt, supra* at 315, 15 OBR at 444, 473 N.E.2d at 826 ('[u]nder Civ.R.23(B)(3), a class action must be superior to all other available methods for adjudication of the controversy and one of the tests of superiority is the manageability of the action');  *Warner, supra*, at 97, 521 N.E.2d at 1097 ('While we recognize the trial court's order was conditional, we entertain grave concern toward the potpourri of claims that could produce problems of manageability.  * * *  We must keep in mind that the policy behind a class action lawsuit is to *simplify* the resolution of complex litigation, not complicate it.')."

"The trial court abused its discretion and committed reversible error by decertifying the class action in this case."

In *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 71, 694 N.E.2d 442, 448, the Ohio Supreme Court identified the elements required for the certification of a class action pursuant to Civ.R. 23 [12]:

■ "The following seven requirements must be satisfied before an action may be maintained as a class action under Civ.R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law

---

12. Civ.R. 23 states:

"RULE 23.  Class actions

"(A) Prerequisites to a class action.  One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(B) Class actions maintainable.  An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class;  or

"(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;  or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;  or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:  (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;  (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;  (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;  (d) the difficulties likely to be encountered in the management of a class action.

"(C) Determination by order whether class action to be maintained;  notice;  judgment; actions conducted partially as class actions.

"(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained.  An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met. Civ.R. 23(A) and (B); *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091."

The *Hamilton* court addressed the Civ.R. 23(B) requirements as follows:

■ "Civ.R. 23(B)(3) provides that an action may be maintained as a class action if, in addition to the prerequisites of subdivision (A), 'the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.'

■ "The purpose of Civ.R. 23(B)(3) was to bring within the fold of maintainable class actions cases in which the efficiency and economy of common adjudication outweigh the interests of individual autonomy. *Warner, supra*, 36 Ohio St.3d at 96, 521 N.E.2d at 1096; *Marks, supra*, 31 Ohio St.3d at 204, 31 OBR at 401–402, 509 N.E.2d at 1254; *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 314, 15 OBR 439, 442, 473 N.E.2d 822, 825; 7A Wright, Miller & Kane, *supra*, at 517–519, Section 1777; 5 Moore's Federal Practice, *supra*, at 23–203, Section 23.44; 1966 Advisory Committee Note to Fed.R.Civ.P. 23(b)(3). Thus, '[t]his portion of the rule also was expected to be particularly helpful in enabling numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights.' 7A Wright, Miller & Kane, *supra*, at 518, Section 1777.

"As the high court recently explained:

■ " ' "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." ' *Amchem, supra*, 521 U.S. at 617, 117 S.Ct. at 2246, 138 L.Ed.2d at 709, quoting *Mace v. Van Ru Credit Corp.* (C.A.7, 1997), 109 F.3d 338, 344." *Hamilton, supra*, 82 Ohio St.3d at 79–80, 694 N.E.2d at 453–454. See, also, *Amchem Prods., Inc. v. Windsor* (1997), 521

U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689; *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249; 7A Wright, Miller & Kane, Federal Practice and Procedure (2 Ed.1986), Section 1777; 5 Moore's Federal Practice (3 Ed.1997), Section 23.44.

The certification decision is reviewed under an abuse of discretion standard, and the trial court's determination will not be disturbed absent an abuse of that discretion. *Hamilton, supra,* 82 Ohio St.3d at 70–71, 694 N.E.2d at 447; *Cohen v. Bankers Life & Cas. Co.* (Oct. 15, 1998), Cuyahoga App. No. 72549, unreported, 1998 WL 723165, at 2, citing *Marks v. C.P. Chem. Co., supra,* at syllabus; *Beder v. Cleveland Browns, Inc.* (1998), 129 Ohio App.3d 188, 192–193, 717 N.E.2d 716, 719–720. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 232, 12 OBR 313, 314–315, 466 N.E.2d 875, 876–877; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142; *Beder v. Cleveland Browns, Inc.* (1998), 129 Ohio App.3d 188, 200–201, 717 N.E.2d 716, 724–725.

Prior to addressing the three elements the trial court found wanting, appellants allege that the trial court's approach to the issue of class certification impermissibly reached the merits of the action in accepting Medina Supply's version of the facts (*i.e.,* a myriad of factors) while rejecting appellants' version of the facts regarding commonality (*i.e.,* excessive water in the mix). Appellants claim that this approach, reaching the merits of a case, runs counter to *Ojalvo v. Bd. of Trustees of Ohio State Univ., supra.*

*Ojalvo,* a breach of contract case, stands for the proposition that a trial court, when determining whether to certify a class action, may not deny certification where the court "requires a certainty that a common issue of fact 'probably exists' based on the merits of the class claim." *Id.* at syllabus. The trial court, in making its determination herein, repeatedly asserted that it was not ruling on the merits of the action and there is no indication that it required a certainty that the appellants' version of the facts existed when revoking certification. Instead, the trial court merely reviewed the available evidence, as it was bound by law to do using a rigorous analysis, and came to its conclusions. The court did not conclude that the cause of the concrete failure was any particular factor to the exclusion of others.

At this point we will turn to the three Civ.R. 23 factors the trial court found wanting.

With regard to the element of commonality, *Hamilton, supra,* 82 Ohio St.3d at 77, 694 N.E.2d at 452, stated:

"Civ.R. 23(A)(2) requires the presence of 'questions of law or fact common to the class.' Courts generally give this requirement a permissive application. It is not necessary that all questions of law or fact raised in the dispute be common to all parties. If there is a common nucleus of operative facts, or a common liability issue, the rule is satisfied. *Marks, supra,* 31 Ohio St.3d at 202, 31 OBR at 399–400, 509 N.E.2d at 1252–1253; *Warner, supra,* 36 Ohio St.3d 91, 521 N.E.2d 1091, paragraph three of the syllabus. The issue of whether there are any additional questions affecting only individual class members does not enter the class certification analysis until the Civ.R. 23(B)(3) requirement of predominance and superiority is applied. *Marks, supra,* 31 Ohio St.3d at 202, 31 OBR at 400, 509 N.E.2d at 1253."

Here, the class presents the common legal claims of product liability and consumer sales practices violations in the supplying of concrete to the residential driveways at issue. The common defect complained of is scaling, a defect that was present in all of the driveways contained in the sampling group examined by defendant's experts, Mr. Klieger and Mr. Gebler. While it is true, as determined by the trial court, that the evidence indicated a number of other individualized defects or issues with the driveways (spalling, pop-outs, flaking, cracking, etc.), these other individualized issues do not come into play until the analysis of Civ.R. 23(B)(3)'s predominance and superiority elements is conducted. See *Marks, supra,* 31 Ohio St.3d at 202, 31 OBR at 400, 509 N.E.2d at 1253. Accordingly, the trial court abused its discretion in determining that the commonality element was not demonstrated due to the presence of these other individualized issues.

With regard to the elements of predominance and superiority under Civ.R. 23(B)(3), we conclude that the trial court abused its discretion in finding these elements to be unfulfilled. The difficulties and complexities affecting the claims of individual class members does not outweigh the efficiency and economy of a common adjudication in this case. See *Warner,* 36 Ohio St.3d at 96, 521 N.E.2d at 1095–1096. It must be remembered that the class affects approximately one thousand property owners throughout northern Ohio who were supplied concrete by Medina. The individual financial claims of these property owners in the class are, given the size and cost of a typical residential driveway, relatively small in dollar terms, less than $10,000 each. The individual claim, when viewed against the typical legal and expert witness fees customarily employed to litigate such a claim, necessarily militates against the bringing of individual small damage claims in favor of resolving these claims in a more efficient and economical legal vehicle for all parties, namely, a class action, wherein the claims can be aggregated and the common theories advanced for recovery (excessive water in the concrete mix that manifested itself in the numerous defects noted in the driveways), and theories common to the defense and to potential third-party subcon-

tractors who installed the driveways and suppliers who provided raw materials to Medina, can be expressed and analyzed by the factfinder. This determination that the class action is superior and more efficient than the presentation of a multitude of individual lawsuits is also buttressed by the length of time between this point and the accrual of damage to the driveways. During this passage of time, the class action was provisionally certified in May 1994 by the original trial court judge, in an interlocutory decision that was appealed by Medina and dismissed by this appellate court in May 1995. In late 1997, after nearly three years of litigation and discovery during which the driveway owners relied upon the continued class action status of the litigation and did not proceed to initiate individual lawsuits for their protection, Medina moved to decertify the class. The matter is now pending for the release of this appellate decision as of April of 2000. This passage of time, from May 1994 to the present time (April 2000), works a particular hardship on the driveway owners in the litigation of individual lawsuits herein, including deterioration or loss of evidence, witness unavailability, and fading memories. It is the presence of these hardships that makes the class action a superior and more efficient vehicle with which to litigate the common basis of liability (excessive water in the concrete mix causing the defects in the driveways) and the common defenses available to Medina. Finally, given the widespread locations of the allegedly defective driveways and the fact that there is only one headquarters location for Medina's corporate main office, it makes sense to avoid a multiplicity of individual lawsuits in trial courts throughout northern Ohio, and the geometric explosion of expenses and costs that these multiple cases would necessarily generate, and vest jurisdiction in one trial venue for as speedy a resolution of the claims as can be realized with reasonable efforts by the parties, counsel, and the court. See Civ.R. 23(B)(3)(c).

The assignment of error is sustained.

*Judgment reversed*
*and cause remanded.*

KARPINSKI, P.J., and ROCCO, J., concur.