[Cite as *Cullen v. State Farm Mut. Auto. Ins. Co.*, 2011-Ohio-6621.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 95925

---

## MICHAEL E. CULLEN

### PLAINTIFF-APPELLEE

vs.

## STATE FARM MUTUAL
## AUTOMOBILE INSURANCE CO.

### DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED IN PART, REVERSED IN PART,
### AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-555183

**BEFORE:** Celebrezze, J., Stewart, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** December 22, 2011

**ATTORNEYS FOR APPELLANT**

Mark A. Johnson
Joseph Ezzie
Robert J. Tucker
Baker & Hostetler, L.L.P.
65 East State Street
Suite 2100
Columbus, Ohio   43215-4260

Michael K. Farrell
Baker & Hostetler, L.L.P.
3200 PNC Center
1900 East Ninth Street
Cleveland, Ohio   44114-3485

Robert Shultz
Heyl, Royster, Voelker & Allen, P.C.
Suite 100 Mark Twain Plaza III
P.O. Box 467
Edwardsville, Illinois   62025


**ATTORNEYS FOR APPELLEE**

W. Craig Bashein
John P. Hurst
Bashein & Bashein Co., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio   44113-2216

Paul W. Flowers
Paul W. Flowers Co., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio   44113

continued . . .

**AMICI CURIAE**

For National Association of Mutual Insurance Companies ("NAMIC")
Anthony T. Eliseuson
Steven M. Levy
SNR Denton US, L.L.P.
233 South Wacker Drive
Suite 7800
Chicago, Illinois   60606

For Ohio Insurance Institute ("OII")
Daniel J. Kelso
172 East State Street
Suite 201
Columbus, Ohio   43215-4321

FRANK D. CELEBREZZE, JR., J.:

{¶ 1}   Appellant, State Farm Mutual Automobile Insurance Company ("State Farm"), challenges the trial court's September 29, 2010 order certifying a class of individuals and businesses allegedly harmed by State Farm when making "glass only" claims for damage to windshields that were repaired rather than replaced.   State Farm argues that class certification is inappropriate.   After a thorough review of the record and law, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.   Background

{¶ 2}   Appellee, Michael Cullen, filed suit against State Farm on February 18, 2005 raising claims of breach of contract, bad faith, and breach of fiduciary duty.   He sought monetary and declaratory relief as well as class certification.   He submitted his

motion for class certification on August 23, 2005. However, State Farm requested that the trial court allow it to file a motion for summary judgment and that the court rule on that motion prior to ruling on questions regarding class certification.

{¶ 3} On September 20, 2006, State Farm filed its motion for summary judgment. Due to several discovery irregularities, the proceedings dragged on until March 29, 2007, when the trial court denied State Farm's motion for summary judgment.

{¶ 4} After that, the trial court took up the class certification question and held a hearing on that motion on April 14, 2010. In his complaint and class certification motion, Cullen alleged that State Farm implemented a program to encourage windshield repair rather than replacement for qualifying windshield claims and never disclosed to claimants a benefit option under their policies of insurance. Prior to 1991, State Farm had a program to use a repair procedure to fix chipped or cracked windshields rather than replace them. In 1997, State Farm subcontracted the handling of glass-only damage claims[1] to Lynx Services, L.L.C. ("Lynx"). According to Cullen, Lynx, in conjunction with State Farm, developed a script[2] that representatives would use to steer claimants to select windshield repair, even for claimants with no deductible.[3] However, the repair

---

[1] State Farm had a policy provision for claims where only damage to glass was involved during some of the class period. Damage to glass as a result of collision was handled separately.

[2] State Farm refers to this as a decision tree and adamantly argues it is not a script.

[3] Cullen argues that 51 percent of putative class members had no deductible.

option was only available for windshields that qualified (having small chips or cracks that were not in the driver's immediate view) and only if the insured agreed to the repair.

{¶ 5} In 2003, Cullen called State Farm to report damage to his windshield caused by a stone. He was transferred to a Lynx agent and agreed to have his windshield repaired rather than replaced. To encourage claimants to take the repair option, State Farm waived the deductible so that windshields were repaired at no charge to the insured. A policy provision to that effect was added in 1998.[4] Cullen alleges that the script used by Lynx did not set forth all the options claimants had, a violation of state insurance regulations. Specifically, he alleges that Lynx never disclosed a "pay-out" option where claimants could receive a check for the entire amount of the windshield, less the deductible, and then have the windshield repaired at their own expense. Cullen argues this is the only option that would have been chosen by an insured had their options been fully explained to them. He further alleges that State Farm saved a great deal of money by pushing repair rather than replacement for these claimants. State Farm's cost of a new windshield averaged $342, even after the deductible was subtracted; the cost of repair was often less than $50.

{¶ 6} Cullen asserts that there are some 100,000 people who filed glass-only claims during the class period who may have been affected by State Farm's non-disclosure of all available options under the policy.

---

[4] After Cullen's suit was filed in 2005, State Farm removed that waiver.

**{¶ 7}** The trial court found that Cullen had satisfied all the requirements of class certification using the following definition:

**{¶ 8}** "All persons and business entities covered under an Ohio motor vehicle insurance policy issued by [State Farm] who made a 'Glass Only' physical damage comprehensive coverage claim on or after January 1, 1991 for cracked, chipped or damaged windshields and received a chemical filler or patch repair, or payment thereof, instead of a higher amount for actual cash value or replacement cost of the windshield. The lesser of the amount of the actual cash value or the replacement cost of the windshield for each claim must exceed the insured's applicable deductible."

**{¶ 9}** The definition also included two subclasses — those who had claims administered by Lynx and those who did not.[5] State Farm then timely filed the instant appeal, raising three errors.

## II. Law and Analysis

### A. Class Certification Under Civ.R. 23(B)(3)

**{¶ 10}** State Farm first argues that "[t]he trial court erred and abused its discretion by granting the motion of plaintiff-appellee for class certification under Rule 23(B)(3)." In *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 2000-Ohio-397, 727 N.E.2d 1265, the Ohio Supreme Court reaffirmed that the standard of review to be applied for class action certification is that of an abuse of discretion. A trial court

---

[5] The definition also had three categories of excluded individuals, including those who have previously filed suit, officers or employees of State Farm or the parties in this case, and those who opt out of the class.

possesses broad discretion in determining whether a class action may be maintained. That determination will not be disturbed absent a showing that the discretion was abused. Id. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Beder v. Cleveland Browns, Inc.* (1998), 129 Ohio App.3d 188, 717 N.E.2d 716. The trial court's decision regarding the certification of a class should not be reversed on appeal because the appellate judges would have decided the issue differently had the initial determination been in their hands. *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 1998-Ohio-365, 694 N.E.2d 442.

{¶ 11} The class action is an invention of equity. Its purpose is to facilitate adjudication of disputes involving common issues between multiple parties in a single action. *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 62, 556 N.E.2d 157. The plaintiff bears the burden of establishing the right to a class action. *Shaver v. Standard Oil Co.* (1990), 68 Ohio App.3d 783, 589 N.E.2d 1348. Class certification in Ohio is based on Rule 23 of the Ohio Rules of Civil Procedure, which is identical to Rule 23 of the Federal Rules of Civil Procedure, so federal law is also useful in analyzing a given situation.

{¶ 12} In *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, the Ohio Supreme Court listed seven elements necessary for a class to be certified. In determining whether a class action is properly certified, the first step is to ascertain whether the threshold requirements of Civ.R. 23(A) have been met. Once those requirements are established, the trial court must turn to Civ.R. 23(B) to discern whether

the purported class comports with the factors specified therein. Accordingly, before a class may be certified as a class action, a trial court must make seven affirmative findings. *Warner* at paragraph one of the syllabus.

{¶ 13} Four prerequisites are explicitly set forth in Civ.R. 23 and two are implicit in the rule. Id. The two implicit prerequisites are: (1) the class must be identifiable and unambiguously defined, and (2) the class representatives must be members of the class. Id. at 96.

{¶ 14} The four delineated prerequisites in Civ.R. 23(A) include: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Id. at 97, quoting Civ.R. 23(A). Except as commonality relates to predominance, State Farm limits its arguments on appeal to the requirements in Civ.R. 23(B).

{¶ 15} Finally, the trial court must also find that one of the three Civ.R. 23(B) requirements is met before the class may be certified. Id. at 94; see, also, *Hamilton*. If the class movant fails to meet one of these requirements, class certification must be denied.

{¶ 16} Civ.R. 23(B)(3) requires that the questions of law or fact common to the members of the class predominate over any questions affecting individual members. As stated in *Hamilton*, "Civ.R. 23(B)(3) provides that an action may be maintained as a class

action if, in addition to the prerequisites of subdivision (A), 'the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'"  Id. at 79-80.

### i.  Predominance

{¶ 17} State Farm first argues that Cullen fails to meet the requirements for class certification under Civ.R. 23(B)(3), predominance.

{¶ 18} In order to satisfy the predominance requirement, Cullen must show that the common questions of law and fact represent a significant aspect of the class and are capable of resolution for all members of the class in a single adjudication.  *Shaver v. Standard Oil Co.* at 799;  *Wal-Mart Stores, Inc. v. Dukes* (2011), 564 U.S. ___, 131 S.Ct. 2541, 180 L.Ed.2d 374.

{¶ 19} The mere assertion that common issues of law or fact predominate does not satisfy the express requirements under the rule.  In *Waldo v. N. Am. Van Lines, Inc.* (W.D.Pa. 1984), 102 F.R.D. 807, the court stated:  "[It] is not simply a matter of numbering the questions in the case, [labeling] them as common or diverse, and then counting up.  It involves a sophisticated and necessarily judgmental appraisal of the future course of the litigation * * *."

{¶ 20} Where the circumstances of each proposed class member need to be analyzed to prove the elements of the claim or defense, then individual issues would

predominate and class certification would be inappropriate. *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 314, 473 N.E.2d 822.

{¶ 21} Here, if Cullen's theory of the case is believed, the use of a common plan to steer claimants to opt for repair rather than replacement or disclosure of a cash payment for the value of the glass, less deductible, is a significant class-wide issue.

{¶ 22} According to Ohio Admin. Code 3901-1-54(E)(1), an insurer must "fully disclose to the first party claimants all pertinent benefits, coverages or other provisions of an insurance contract under which a claim is presented." Cullen argues this was not done because the Lynx representatives never disclosed the payment option he seeks and steered claimants to repair rather than replacement of their windshields.[6]

{¶ 23} State Farm argues that no such "pay-out" option exists in the insurance contract. Cullen argues that State Farm's policies provide that it will "pay loss to your car * * * but only for the amount of each such loss in excess of the deductible amount, if any." Cullen further alleges that loss is further defined to give State Farm the option to "settle a loss with [the claimant] in any of the following ways: * * * 'pay the actual cash value' of the property at the time of loss, 'pay to repair' the damaged property or part, or 'pay to replace' the property or part."

{¶ 24} Although hotly contested by the parties, the contract may provide for a cash payment option, as Cullen argues, but that may be discretionary to be decided exclusively

---

[6] Significant is State Farm's instruction to minimize replacement and encourage repair even to claimants with no deductible.

by State Farm. Further, "[a] court should not create an obligation not found in the contract's terms." *Werner v. Progressive Preferred Ins. Co.* (N.D.Ohio 2008), 533 F.Supp.2d 776, 781, citing *Leigh v. Crescent Square Ltd.* (1992), 80 Ohio App.3d 231, 235, 608 N.E.2d 1166. But none of these issues need be decided at this time because class certification is not akin to a motion for summary judgment.

{¶ 25} State Farm acknowledged that it never repaired a windshield without a claimant's consent. This would indicate that State Farm does not retain absolute discretion over this decision in practice. Further, State Farm employees acknowledged that this pay-out option has been utilized by customers in the past.[7]

{¶ 26} The Supreme Court stated that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' [*Gen. Telephone Co. of S.W. v. Falcon* (1982), 457 U.S. 147,] 157. This does not mean merely that they have all suffered a violation of the same provision of law. * * * Their claims must depend upon a common contention * * *. That common contention, moreover, must be of such a nature that it is capable of class wide resolution — which means that determination of its

---

[7] "'[T]he practical construction made by the parties may be considered by the court as an aid to its construction when the contract is ambiguous, uncertain, doubtful, or where the words thereof are susceptible to more than one meaning, or when a dispute has arisen between the parties after a period of operation under the contract.'" *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶39, quoting *Consol. Mgt., Inc. v. Handee Marts, Inc.* (1996), 109 Ohio App.3d 185, 191, 671 N.E.2d 1304, quoting 18 Ohio Jurisprudence 3d (1980) 46, Contracts, Section 160. Also, "[w]here a dispute arises relating to an agreement under which the parties have been operating for some considerable period of time, the conduct of the parties may be examined in order to determine the construction which they themselves have placed upon the contract, and great weight will be given to such construction." *Natl. City Bank of Cleveland v. Citizens Bldg. Co. of Cleveland* (1947), 74 N.E.2d 273, 279.

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes* at 2551. Here, the use of a common script creates such a common, class-wide contention making this case suitable for class litigation. The trial court examined these issues and determined that Cullen has raised a colorable claim sufficient to satisfy the Civ.R. 23 standards. That was not an abuse of discretion.

{¶ 27} Part of State Farm's predominance argument boils down to difficulty in calculating damages and that some members of the class would have no damages. If included class members had no damages, this would be inappropriate because Cullen's cause of action for breach of contract requires a showing of damages-in-fact to succeed. *Estate of Mikulski v. Centerior Energy Corp.*, Cuyahoga App. No. 94536, 2011-Ohio-696, ¶14 ("appellants must demonstrate that they were actually damaged as an element of their breach of contract and fraud claims").

{¶ 28} The trial court narrowed the class definition to only include damaged individuals, and difficulty in calculating damages should not stand as a reason to avoid class certification. If the fact of damages can be shown with certainty in a class-wide manner, difficulty in calculating the amount is insufficient to avoid certification. *Hoang v. E\*Trade Group, Inc.*, 151 Ohio App.3d 363, 2003-Ohio-301, 784 N.E.2d 151, ¶20; *Estate of Mikulski* at ¶20.

{¶ 29} The trial court broke down the class further into two subclasses — those who had their claims handled by Lynx and those who did not.

**{¶ 30}** Addressing those with claims handled by Lynx, the trial court found the use of a common scripted conversation constituted a common issue where liability could be determined based on whether this conversation improperly prompted claimants to elect repair without having their options properly explained to them.

**{¶ 31}** The existence of the Lynx script or "word track" offers evidence of class-wide treatment that can reasonably establish evidence of Cullen's claim. The trial court's certification of this subclass of putative class members was not an abuse of discretion.

**{¶ 32}** However, Lynx was not involved in claims filed before August 1997, and its script cannot be used for claims made before this period. Cullen's theory of the case is that cash-out payments that were a benefit under the policy were never disclosed.

**{¶ 33}** In *Cope v. Metro. Life Ins. Co.*, 82 Ohio St.3d 426, 1998-Ohio-405, 696 N.E.2d 1001, the Ohio Supreme Court found that generalized evidence that proves or disproves an element of the claim obviates the need to examine individual issues of reliance. Id. at 436. In the case of claims submitted before 1997, Cullen argues that he only needs to show that State Farm had an obligation to restore the claimant's vehicle to preloss condition, and he purports to offer expert testimony to show that a windshield can never be repaired to restore it to preloss condition. The use of generalized evidence found in the common contract between the entire subclass and the testimony and findings of Cullen's experts provides a means of resolving a significant question of breach of

contract without the need to examine individual issues.  Therefore, the trial court did not abuse its discretion in certifying this subclass.

{¶ 34} State Farm argues that by placing a calculation of damages within the class definition, Cullen has created an impermissible "fail-safe class."  This "refers to a class definition that is improper because the members of the class cannot be known until a determination has been made as to the merits of the claim or the liability of the opposing party.  *Adashunas v. Negley* (C.A.7, 1980), 626 F.2d 600, 603.  Thus, a fail-safe class 'put[s] the cart before the horse.'"  *Mims v. Stewart Title Guar. Co.* (N.D.Tex. 2008), 254 F.R.D. 482, 486.  Here, that is not the case because a mathematical calculation to determine whether a given windshield replacement is more expensive than a given deductible can be accomplished without trying the issues of the case and can be done in a straight forward, mechanical manner.

{¶ 35} However, State Farm has identified a group of individuals whose inclusion in the class is inappropriate.  It argues that approximately 990 putative class members had their windshields repaired and then later replaced after complaining to State Farm about the quality of the repair.  These individuals are included in the class under the current definition, but would have no damages similar to the claims of the class because their windshields were replaced.  Therefore, the class definition should be amended to exclude these putative class members.

### ii. Manageability

**{¶ 36}** State Farm also argues that the class is not manageable. The trial court's handling of such a large class will be difficult, but its administration is facilitated by the careful records kept by State Farm and others and the ability to accurately calculate damages using computerized algorithms and State Farm's databases of information (including the make and model of each claimant's vehicle; the historic cost of windshield replacement, including labor, available in National Auto Glass Specification pricing guides; the percent difference from that cost as calculated through assigning various market designations to counties in Ohio, already done by State Farm; and the amount of individual deductibles at the time a claim was submitted). See *Stammco, L.L.C. v. United Tel. Co. of Ohio*, Fulton App. No. F-07-024, 2008-Ohio-3845, ¶59, reversed on other grounds by *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292.

**{¶ 37}** State Farm's records, in conjunction with available industry data, contain the necessary information to arrive at a reasonable estimation of damages for each putative class member and to determine class membership. Therefore, manageability is not so insurmountable that class certification should be denied.

**{¶ 38}** Further, while several iterations of insurance policies cover the class period, the language in those policies that impacts Cullen's claim is substantially similar. The existence of these different policies does not preclude class-wide treatment of the claims at issue.

### iii. Superiority

**{¶ 39}** State Farm also alleges that a class action is not the best form in which to litigate this issue. The Ohio Supreme Court has recognized that four factors listed by the drafters of Civ.R. 23(B)(3) may be of importance when addressing whether the class vehicle is superior to other methods of litigating claims: "'(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.'" *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 314, 473 N.E.2d 822.

**{¶ 40}** Here, as in *Hamilton*, "[n]o individual has attempted to institute a parallel action or to intervene in this action, and it is unlikely that any new suits will be filed given the relatively small individual recoveries and the massive duplication of time, effort, and expense that would be involved. While the class is numerically substantial, it is certainly not so large as to be unwieldy. Class action treatment would eliminate any potential danger of varying or inconsistent judgments, while providing a forum for the vindication of rights of groups of people who individually would be without effective strength to litigate their claims." Id. at 80. Based on all these factors, class treatment is the superior method of resolving the present dispute.

### B.   Class Certification Under Civ.R. 23(B)(2)

**{¶ 41}** State Farm next argues that "[t]he trial court erred and abused its discretion by granting plaintiff's motion for class certification under Rule 23(B)(2)." This provision states, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]"

**{¶ 42}** Under this provision, a plaintiff must show that the defendant's actions impact the entire class and that final injunctive or declaratory relief is appropriate.

**{¶ 43}** The trial court found, "it appears that the same practices which [Cullen] experienced are still ongoing. Declaratory and injunctive relief are thus potentially available remedies which can be issued on a class wide basis in the event that he prevails upon the merits of his claim."

**{¶ 44}** Here, Cullen seeks declaratory relief under Civ.R. 23(B)(2). Under federal law, declaratory relief is proper under The Declaratory Judgment Act of 1934, now 28 U.S.C. 2201, either "'1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or 2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.'" *Sarafin v. Sears, Roebuck & Co., Inc.* (D.C. Ill., 1978), 446 F.Supp. 611, 615, quoting *Maryland Casualty Co. v. Rosen* (C.A.2, 1971), 445 F.2d 1012, 1014.

**{¶ 45}** State Farm argues that the declaratory relief sought is incidental to monetary damages.

**{¶ 46}** "Certification under Civ.R. 23(B)(2) depends upon what type of relief is primarily sought, so where the injunctive relief is merely incidental to the primary claim for money damages, Civ.R. 23(B)(2) certification is inappropriate." *Wilson v. Brush Wellman, Inc.*, 103 Ohio St.3d 538, 2004-Ohio-5847, 817 N.E.2d 59, ¶17, citing *Zinser v. Accufix Research Inst., Inc.* (C.A.9, 2001), 253 F.3d 1180. The Seventh Circuit, in denying certification of a class action seeking injunctive relief and money damages, has also stated that "[a]n injunction would not provide 'final' relief as required by Rule 23(B)(2). An injunction is not a final remedy if it would merely lay an evidentiary foundation for subsequent determinations of liability." *Kartman v. State Farm Mut. Auto. Ins. Co.* (C.A. 7, 2011), 634 F.3d 883, 893.

**{¶ 47}** In *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 203, 509 N.E.2d 1249, class certification was denied for individuals who had foam insulation with toxic formaldehyde levels sprayed into their homes. The plaintiffs sought future diagnostic testing for class members in addition to damages. The Ohio Supreme Court declined to certify the class under Civ.R. 23(B)(2) because the "provision is inapplicable where the primary relief requested is damages."

**{¶ 48}** Recently, in *Dukes*, the Supreme Court found that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." Id. at 2557.[8] The court went on to find

---

[8] The distinction is not a small one because significant notice and opt-out provisions are mandatory in Civ.R. 23(B)(3) classes that are absent from Civ.R. 23(B)(2). See *Dukes* at 2558-2559.

that "individualized monetary claims belong in Rule 23(b)(3). The procedural protections attending the (b)(3) class — predominance, superiority, mandatory notice, and the right to opt out — are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary to a (b)(2) class. When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute." Id. at 2558. The court did not address the specific question here — whether a class should be certified under both Civ.R. 23(B)(2) and (B)(3).

{¶ 49} However, "[a]s the Supreme Court of Ohio stated, '[d]isputes over whether the action is primarily for injunctive or declaratory relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy. Therefore, they should be avoided. If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2). * * * The court has the power under subdivision (c)(4)(A), which permits an action to be brought under Rule 23 "with respect to particular issues," to confine the class action aspects of a case to those issues pertaining to the injunction and to allow damage issues to be tried separately.'" *Asset Acceptance L.L.C. v. Caszatt*, Lake App No. 2009-L-090, 2010-Ohio-1449, ¶71, quoting *Hamilton* at 87, quoting Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2 Ed.1986) 470, Section 1775.

**{¶ 50}** Here, the relief sought includes money damages that require individualized analyses as to the proper amount, but that relief flows from the declaratory judgment sought. This is the test developed by the Fifth Circuit in determining whether certification of such a class is proper. See *Allison v. Citgo Petroleum Corp.* (C.A.5, 1998), 151 F.3d 402. That court defined incidental to mean damages that "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." Id. at 415. Here, whether we engage in the more rigorous analysis of whether a class should be certified under both subsections or following the Ohio Supreme Court's guidance to avoid such an analysis, the result is the same. The class is maintainable under both Civ.R. 23(B)(2) and (B)(3).

**{¶ 51}** Appellant's second assignment of error is overruled.

### C. Failure to Conduct a Rigorous Analysis

**{¶ 52}** Finally, State Farm alleges that "[t]he trial court abused its discretion by failing to conduct the rigorous analysis of the requirements for class certification under Rule 23 required by Ohio law."

**{¶ 53}** State Farm claims the trial court did not undertake its own rigorous analysis of the Civ.R. 23 requirements, but merely adopted wholesale Cullen's proposed findings of facts and conclusions of law. Not only is this a good way to perturb the trial judge, it is also incorrect.

**{¶ 54}** The trial court presided over a hearing where both sides presented evidence on whether the class should be certified in this case and asked salient questions of both

sides. It used much of the language in Cullen's proposed findings of facts and conclusions of law, but its opinion was half the length as the proposed findings. Further, it narrowed the class definition to address State Farm's argument regarding potential class members without any injury. Appellant provides no evidence that the trial court did not undertake a reasoned analysis of the issues presented to arrive at a rational, logical conclusion.

{¶ 55} However, the trial court's findings of fact and conclusions of law do go too far into the merits of the case. One statement in particular is possibly outcome determinative. The trial court states that a cash pay-out option was available and that State Farm failed to disclose that option. This goes to the heart of the merits of the case and is inappropriate at this point. Class certification does not address the merits of the claim. This is understandable given that both sides argued the merits during class certification and continue to do so in their briefs before this court.

### III. Conclusion

{¶ 56} For claims handled using a common script or word track, the trial court did not err in certifying the class in this case. Individual questions do not predominate because the script used by Lynx and developed by State Farm establishes class-wide treatment under Cullen's theory that State Farm breached its contracts with insureds by dissuading individuals from replacing their windshields and not informing them of their option to receive a check for the value of the windshield less their deductible. For claims made prior to the use of a common script, Cullen argues that the policy language

simplifies the case to a showing that the policy in question required State Farm to restore vehicles to their preloss condition and that a windshield repair cannot do so. The theory, while dubious, does provide a means to resolve the case on a class-wide basis for these members. Therefore, the trial court did not err in certifying this class. However, the class definition must be restricted to exclude those who had their windshields replaced after repair. Finally, State Farm has provided nothing to indicate that the trial court did not fulfill its duty to analyze the issues in this case when rendering its judgment.

{¶ 57} This cause is affirmed as to certification of a class action, but reversed as to the class definition and remanded to the trial court to redefine the class.

It is ordered that appellant and appellee share the costs herein taxed.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

The court finds there were reasonable grounds for this appeal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

JAMES J. SWEENEY, J., CONCURS;
MELODY J. STEWART, P.J., DISSENTS (WITH SEPARATE OPINION)


MELODY J. STEWART, P.J., DISSENTING:

{¶ 58} The class action complaint filed in this case presents three distinct groupings of State Farm policyholders whose claims for damaged windshields must be divided into numerous sub-groupings. To be sure, there is a "common" issue regarding whether State Farm had an obligation to make a cash payment available to its policyholders in lieu of a repair, but the commonality is so general in nature that it fails to distill into a concrete legal issue. When these varying groups are broken down into their constituent parts, I believe that any litigation going forward will be so unmanageable as to make class certification an abuse of the court's discretion.

I

{¶ 59} Civ.R. 23(A)(2) defines "commonality" as "questions of law or fact common to the class." The court found that the common claim presented in this case was whether State Farm was contractually obligated to make available to all glass-only claimants the cash value of a replacement windshield.

{¶ 60} While I agree that Cullen's complaint presents a common question on the issue of whether State Farm had to offer glass-only claimants the cash value of a replacement windshield, that was merely a threshold question that did not resolve other, equally important, class-wide issues. In *Wal-Mart Stores, Inc. v. Dukes* (2011), 564 U.S. ___, 131 S.Ct. 2541, 180 L.Ed.2d 374,[9] the United States Supreme Court cautioned that it is "easy to misread" the commonality requirement of Fed.R.Civ.P. 23 (and by extension,

---

[9] Because Civ.R. 23 is patterned after Fed.R.Civ.P. 23, "federal authority is an appropriate aid to interpretation of the Ohio rule." *Marks v. C.P. Chem. Co.* (1987), 31 Ohio St.3d 200, 201, 509 N.E.2d 1249.

Civ.R. 23) because "[a]ny competently crafted class complaint literally raises 'common questions.'" (Internal quotations omitted.) Id. at 2551, quoting Nagareda, Class Certification in the Age of Aggregate Proof (2009), 84 N.Y.U.L.Rev. 97, 131-132. Construing a Title VII gender discrimination claim for a class of 1.5 million female Wal-Mart workers, the Supreme Court acknowledged that these claims presented a "common" Title VII claim of gender discrimination, but noted that "[t]his does not mean merely that [the workers] have all suffered a violation of the same provision of law." Id. Given the separate nature of injury that can be asserted under Title VII (intentional discrimination or disparate impact), the court found that the mere claim of a Title VII injury "*** gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention — for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

{¶ 61} There is no dispute that the class certified by the court encompassed policyholders in three distinct time periods: (1) from 1991 to March 1998, State Farm had no windshield repair language in its automobile policies; (2) from April 1998 to August 2005, State Farm had policy language stating that it would waive any deductible for a glass-only claim if the policyholder agrees to have the windshield repaired; and (3)

from September 2005 to present, State Farm no longer waived the deductible and would repair the windshield for glass-only claimants only if agreed to by the policyholder.

{¶ 62} As in *Dukes*, this class encompassed far too many theories of recovery under a "common" question to present a unified class. Different policyholders were at times covered under different versions of the State Farm automobile policy. Over the 20-year period, policyholders could be determined to have suffered losses, if any, under multiple variations on the theme of "glass only" claims. Some policyholders may have had their windshields immediately replaced while others had their windshields repaired. For those who had their windshields repaired, some had their deductibles waived while others did not. Some policyholders may have expressly given permission for repair while others may not have given permission. And, of course, some policyholders were advised under the Lynx word track while others were not. While there may be an initial common question of State Farm's obligation to offer a cash payment in lieu of repair, the many permutations of the underlying claim do not present common issues sufficient to justify certification into a single class of policyholders.

II

{¶ 63} I likewise find that the court erred by concluding that the class it defined was manageable.

{¶ 64} "Manageability" encompasses "the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen*, 417 U.S. at 164. In determining manageability, the court should consider the potential difficulties in

notifying class members of the suit, calculation of individual damages, and distribution of damages. *Maguire v. Sandy Mac, Inc*. (D.N.J. 1992), 145 F.R.D. 50, 53-54. The courts must evaluate the costs and benefits of adjudicating plaintiffs' claims in a class action, as compared to the costs and benefits of proceeding through numerous separate actions.

{¶ 65} The need for individualized damage assessments adversely affects the need for class certification. *Broussard v. Meineke Discount Muffler Shops, Inc.* (C.A.4, 1998), 155 F.3d 331, 342-343. However, individualized damages assessments are manageable when "variables are identifiable on a classwide basis and, when sorted, are capable of determining damages for individual policyowners ***." *In re Monumental Life Ins. Co.* (C.A.5, 2004), 365 F.3d 408, 419.

{¶ 66} In Conclusion of Law No. 14, the court conceded that "the recovery due each class member will not be identical," but found that fact alone did not warrant a finding that the class would be unmanageable. The court found that State Farm had a computer database and "the ability to employ computer analysis of those records." See Conclusion of Law No. 12.

{¶ 67} In *In re Bridgestone/Firestone, Inc*. (C.A.7, 2002), 288 F.3d 1012, 1018-1021, the court of appeals reversed class certification because the plaintiffs' alleged defective tire design class action would be unmanageable because tires were recalled at different times, they may have differed in their propensity to fail, some vehicles were resold, some owners alleged they were advised to underinflate their tires, and there were six tire models representing 67 different designs.

**{¶ 68}** As in *Bridgestone*, there are too many damages variables present in this case to make the class manageable. There are 100,000 proposed class members who, over a 20-year period, made glass-only claims. Those policyholders were, during that period, covered under three distinct State Farm approaches to glass-only windshield claims. Some had their windshields repaired with no further complaint; some had their windshields replaced. Policyholders had different deductibles, which may have varied year-to-year as they renewed their policies. Some, but not all, policyholders had their deductibles waived after agreeing to accept a windshield repair. The policyholders drove different automobiles, which required significantly different types of windshields, the value of which varied depending on the type of car, the size and type of the glass installed on the car, and the labor required to replace the windshield. For example, the cost to replace the windshield of a 2009 luxury sports utility vehicle would likely be significantly higher than the replacement cost for a 1997 subcompact coupe. Even assuming the same make and model of car, the replacement cost would certainly vary over the 20-year period certified by the court due to various factors including inflation or the type and quality of glass used in the windshields.

**{¶ 69}** The court's confidence in its ability to wade through the difficulties posed by variable issues relating to damages assessments based solely on the rather nebulous idea that computers can sort it out is, I believe, misplaced. For trial purposes, it would be extraordinarily difficult to present damages issues as raised in this case. See *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*. (C.A.3, 2001), 259 F.3d 154, 191 (finding

unmanageable class action that would require individualized inquiry into "hundreds of millions" of NASDAQ transactions). Not every member of the class will have suffered the same amount of damages. As noted, those damages will vary not only by the type of policy, but by the cost of repair for each particular model of car during a particular time frame.

{¶ 70} A class action must represent the best "available method[ ] for the fair and efficient adjudication of the controversy." Civ.R. 23(B)(3). The difficulties likely to be encountered in the management of the class as certified by the court are so numerous that I cannot confidently conclude that the case can be fairly tried. I therefore dissent with the majority's decision.