**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE PACQUIAO-MAYWEATHER BOXING MATCH PAY-PER-VIEW LITIGATION, | No. 17-56366 |
| | D.C. Nos. |

GERALD F. ALESSI; VICTOR BOBADILLA; ENRIQUE BARRIOS; DAVID BRADLEY; BILL BRADY; CHAMAR BYNUM; VICTOR CAPO; SEAN MICHAEL CRABTREE; DEVARIOUS CRAIG; KRISTINA DARDEN; JOHN DAY; PAUL DEHART; BRIAN DENIS FLYNN; DAVID GALANDAK; RAY HEREDIA; GREG HOEVENER; JAMMERS, INC.; SETH J. LAMB; JOSEPH LAKE; PAUL MAHONEY; ROBERT MARTINEZ; HEATHER MCDONALD; SUSAN MEDINA; HOWARD MILLER; LISETTE NAZARIO; FELIX NATAL; EVANS NYCOLE; GARY REMPEL; JACQUELINE MORA RODRIGUEZ; JASON SCHOFIELD; GABRIEL IVAN SANTOS; DAVID SMITH;

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-06231-RGK-PLA
2:15-cv-06233-RGK-PLA
2:15-cv-03376-RGK-PLA
2:15-cv-06234-RGK-PLA
2:15-cv-06229-RGK-PLA
2:15-cv-06230-RGK-PLA
2:15-cv-06575-RGK-PLA
2:15-cv-06529-RGK-PLA
2:15-cv-06561-RGK-PLA
2:15-cv-06570-RGK-PLA
2:15-cv-06589-RGK-PLA
2:15-cv-03370-RGK-PLA
2:15-cv-03493-RGK-PLA
2:15-cv-03693-RGK-PLA
2:15-cv-04435-RGK-PLA
2:15-cv-06226-RGK-PLA
2:15-cv-06586-RGK-PLA
2:15-cv-06587-RGK-PLA
2:15-cv-06587-RGK-PLA
2:15-cv-06591-RGK-PLA
2:15-cv-06664-RGK-PLA
2:15-cv-06665-RGK-PLA
2:15-cv-06701-RGK-PLA
2:15-cv-06707-RGK-PLA
2:15-cv-06713-RGK-PLA

| | |
|---|---|
| ANGELA THILL; JOSHUA THRAILKILL; CHRISTOPHER VALLARO; CITY NIGHTS HOSPITALITY, LLC, *Plaintiffs-Appellants*, <br><br> v. <br><br> FLOYD MAYWEATHER, JR.; MAYWEATHER PROMOTIONS, LLC; EMMANUEL PACQUIAO; TOP RANK, INC.; ROBERT ARUM; MICHAEL KONCZ; HOME BOX OFFICE, INC.; TODD DUBOEF, *Defendants-Appellees.* | 2:15-cv-07093-RGK-PLA <br> 2:15-cv-03381-RGK-PLA <br> 2:15-cv-06585-RGK-PLA <br> 2:15-cv-06588-RGK-PLA <br> 2:15-cv-06227-RGK-PLA <br> 2:15-cv-06562-RGK-PLA <br> 2:15-cv-06573-RGK-PLA <br> 2:15-cv-06574-RGK-PLA <br> 2:15-cv-06564-RGK-PLA <br> 2:15-cv-06615-RGK-PLA <br> 2:15-cv-06662-RGK-PLA <br> 2:15-cv-03419-RGK-PLA |

JAMMERS, INC., DBA Flight Restaurant/Flights Beer Bar, individually and on behalf of all others similarly situated; CITY NIGHTS HOSPITALITY, LLC, DBA 48 Lounge,
  *Plaintiffs-Appellants*,

v.

TOP RANK, INC.; EMMANUEL PACQUIAO; MICHAEL KONCZ; ROBERT ARUM; TODD DUBOEF; MAYWEATHER PROMOTIONS, LLC; FLOYD MAYWEATHER, JR.; HOME BOX OFFICE, INC.,
  *Defendants-Appellees.*

No. 17-56372

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-03493-RGK-PLA

PAUL MAHONEY,
individually and on behalf
of all others similarly
situated; BRIAN DENIS
FLYNN; JOHN DAY;
HEATHER MCDONALD;
ANGELA THILL; GARY
REMPEL,
        *Plaintiffs-Appellants*,

v.

EMMANUEL PACQUIAO; TOP
RANK, INC.; MICHAEL
KONCZ; ROBERT ARUM;
TODD DUBOEF; FLOYD
MAYWEATHER, JR.;
MAYWEATHER
PROMOTIONS, LLC; HOME
BOX OFFICE, INC.,
        *Defendants-Appellees.*

No. 17-56379

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-03376-RGK-PLA

| | |
|---|---|
| ENRIQUE BARRIOS; CHRISTOPHER VALLARO; FELIX NATAL; CHAMAR BYNUM; DAVID SMITH, individually and on behalf of all others similarly situated, *Plaintiffs-Appellants*, <br><br> v. <br><br> EMMANUEL PACQUIAO; TOP RANK, INC.; MICHAEL KONCZ; ROBERT ARUM; TODD DUBOEF; FLOYD MAYWEATHER, JR.; MAYWEATHER PROMOTIONS, LLC; HOME BOX OFFICE, INC., *Defendants-Appellees.* | No. 17-56381 <br><br> D.C. Nos. 2:15-ml-02639-RGK-PLA 2:15-cv-06233-RGK-PLA |

| | |
|---|---|
| GERALD F. ALESSI, on behalf of himself and all others similarly situated,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>TOP RANK, INC.; ROBERT ARUM; TODD DUBOEF; EMMANUEL PACQUIAO; MICHAEL KONCZ; HOME BOX OFFICE, INC.; FLOYD MAYWEATHER, JR.; MAYWEATHER PROMOTIONS, LLC,<br>*Defendants-Appellees.* | No. 17-56382<br><br>D.C. Nos.<br>2:15-ml-02639-RGK-PLA<br>2:15-cv-06585-RGK-PLA |

BILL BRADY, individually and on behalf of all others similarly situated; HOWARD MILLER; PAUL BRODSKY; MARCY LOKIETZ,
     *Plaintiffs-Appellants*,

v.

HOME BOX OFFICE, INC.; MAYWEATHER PROMOTIONS, LLC; FLOYD MAYWEATHER, JR.; EMMANUEL PACQUIAO; TOP RANK, INC.; MICHAEL KONCZ; ROBERT ARUM; TODD DUBOEF,
     *Defendants-Appellees.*

No. 17-56384

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-07093-RGK-PLA

DAVID BRADLEY,
     *Plaintiff-Appellant*,

v.

EMMANUEL PACQUIAO; TOP RANK, INC.; MICHAEL KONCZ; ROBERT ARUM; TODD DUBOEF; HOME BOX OFFICE, INC.; MAYWEATHER PROMOTIONS, LLC; FLOYD MAYWEATHER, JR.,
     *Defendants-Appellees.*

No. 17-56385

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-06591-RGK-PLA

| | |
|---|---|
| VICTOR BOBADILLA; LISETTE NAZARIO; JASON SCHOFIELD; EVANS NYCOLE, individually and on behalf of all others similarly situated, *Plaintiffs-Appellants*, | No. 17-56386 <br><br> D.C. Nos. <br> 2:15-ml-02639-RGK-PLA <br> 2:15-cv-06231-RGK-PLA |
| v. | |
| TOP RANK, INC.; MAYWEATHER PROMOTIONS, LLC; ROBERT ARUM; EMMANUEL PACQUIAO; FLOYD MAYWEATHER, JR.; HOME BOX OFFICE, INC.; MICHAEL KONCZ; TODD DUBOEF, *Defendants-Appellees*. | |

DAVID GALANDAK; ROBERT MARTINEZ; SUSAN MEDINA, individually and on behalf of all others similarly situated,
*Plaintiffs-Appellants*,

v.

TOP RANK, INC.; EMMANUEL PACQUIAO; HOME BOX OFFICE, INC.; MAYWEATHER PROMOTIONS, LLC; FLOYD MAYWEATHER, JR.; ROBERT ARUM; TODD DUBOEF; MICHAEL KONCZ,
*Defendants-Appellees.*

No. 17-56387

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-06227-RGK-PLA

GREG HOEVENER,
*Plaintiff-Appellant*,

v.

TOP RANK, INC.; MAYWEATHER PROMOTIONS, LLC; ROBERT ARUM; EMMANUEL PACQUIAO; FLOYD MAYWEATHER, JR.; TODD DUBOEF; MICHAEL KONCZ; HOME BOX OFFICE, INC.,
*Defendants-Appellees.*

No. 17-56388

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-06230-RGK-PLA

Devarious Craig;
Kristina Darden,
　　　*Plaintiffs-Appellants*,

　　　v.

Emmanuel Pacquiao; Top
Rank, Inc.; Robert Arum;
Todd DuBoef; Michael
Koncz; Home Box Office,
Inc.; Floyd Mayweather,
Jr.; Mayweather
Promotions, LLC,
　　　*Defendants-Appellees.*

No. 17-56392

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-06234-RGK-PLA

Paul DeHart; Ray
Heredia,
　　　*Plaintiffs-Appellants*,

　　　v.

Top Rank, Inc.; Emmanuel
Pacquiao; Michael
Koncz; Robert Arum;
Todd DuBoef; Floyd
Mayweather, Jr.;
Mayweather Promotions,
LLC; Home Box Office,
Inc.,
　　　*Defendants-Appellees.*

No. 17-56394

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-06561-RGK-PLA

SETH J. LAMB; VICTOR CAPO, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

HOME BOX OFFICE, INC.; MAYWEATHER PROMOTIONS, LLC; TOP RANK, INC.; MICHAEL KONCZ; ROBERT ARUM; TODD DUBOEF; EMMANUEL PACQUIAO; FLOYD MAYWEATHER, JR.,

*Defendants-Appellees.*

No. 17-56395

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-06662-RGK-PLA

JACQUELINE MORA
RODRIGUEZ; GABRIEL IVAN
SANTOS, individually and on
behalf of all others similarly
situated,
          *Plaintiffs-Appellants*,

                    v.

TOP RANK, INC.; ROBERT
ARUM; MICHAEL KONCZ;
TODD DUBOEF; EMMANUEL
PACQUIAO; MAYWEATHER
PROMOTIONS, LLC; FLOYD
MAYWEATHER, JR.; HOME
BOX OFFICE, INC.,
          *Defendants-Appellees.*

No. 17-56398

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-06665-RGK-PLA

JOSHUA THRAILKILL, on
behalf of himself and all
others similarly situated,
          *Plaintiff-Appellant*,

                    v.

TOP RANK, INC.; ROBERT
ARUM; TODD DUBOEF;
EMMANUEL PACQUIAO;
MICHAEL KONCZ;
MAYWEATHER PROMOTIONS,
LLC; FLOYD MAYWEATHER,
JR.; HOME BOX OFFICE, INC.,
          *Defendants-Appellees.*

No. 17-56399

D.C. Nos.
2:15-ml-02639-RGK-PLA
2:15-cv-06701-RGK-PLA

| | |
|---|---|
| SEAN MICHAEL CRABTREE, *Plaintiff-Appellant*, <br><br> v. <br><br> EMMANUEL PACQUIAO; TOP RANK, INC.; MICHAEL KONCZ; ROBERT ARUM; TODD DUBOEF; FLOYD MAYWEATHER, JR.; MAYWEATHER PROMOTIONS, LLC; HOME BOX OFFICE, INC., <br> *Defendants-Appellees.* | No. 17-56401 <br><br> D.C. Nos. <br> 2:15-ml-02639-RGK-PLA <br> 2:15-cv-06707-RGK-PLA <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted March 7, 2019
Pasadena, California

Filed November 21, 2019

Before: Sidney R. Thomas, Chief Judge, and Ronald Lee
Gilman[*] and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge
for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Class Action

The panel affirmed the district court's dismissal of putative class actions in Multidistrict Litigation brought by spectators against boxers and promoters of the May 2, 2015 Mayweather-Pacquiao fight.

Plaintiffs alleged that defendants concealed a pre-existing injury to boxer Emmanuel "Manny" Pacquiao, and they would not have purchased tickets had they known of the injury.

The panel held that plaintiffs, who were spectators disappointed by a sporting event, did not suffer a legally cognizable injury. The panel further held that plaintiffs essentially got what they paid for – a full-length regulation fight between two boxing legends.

## COUNSEL

Hart L. Robinovitch (argued), Zimmerman Reed LLP, Scottsdale, Arizona; Paul B. Derby, Courtney E. Curtis, and John J. O'Kane IV, Skiermont Derby LLP, Los Angeles, California; Laurence D. King and Matthew B. George, Kaplan Fox & Kilsheimer LLP, San Francisco, California; Marc A. Goldich, Axler Goldich LLC, Philadelphia, Pennsylvania; Kevin P. Roddy, Wilentz Goldman & Spitzer P.A.,Woodbridge, New Jersey; Melissa Emert, Stull Stull &

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Brody, New York, New York; Caleb Marker, Zimmerman Reed LLP, Manhattan Beach, California; William B. Federman and Carin L. Marcussen, Federman & Sherwood, Oklahoma City, Oklahoma; David Woloshin, Astor Weiss Kaplan & Mandel LLP, Philadelphia, Pennsylvania; Todd Seth Garber, Finkelstein Blankenship Freipearson & Garber LLP, White Plains, New York; Abbas Kazerounian, Kazerouni Law Group APC, Costa Mesa, California; Stephen P. DeNittis, DeNittis Osefchen P.C., Marlton, New Jersey; James J. Jimmerson, Jimmerson Law Firm PC, Las Vegas, Nevada; Robert R. Duncan, Duncan Law Group LLC, Chicago, Illinois; Will Kemp and J. Randall Jones, Kemp Jones & Coulthard LLP, Las Vegas, Nevada; Thomas C. Cronin, Cronin & Co. Ltd., Chicago, Illinois; Todd M. Friedman and Adrian R. Bacon, Law Offices of Todd Friedman P.C., Beverly Hills, California; Francis M. Gregorek, Betsy C. Manifold, and Rachelle R. Rickert, Wolf Haldenstein Adler Freeman & Herz LLP, San Diego, California; Lee A. Weiss and Albert G. Lum, Burns Weiss LLP, Canoga Park, California; Shannon L. Hopkins, Nancy A. Kulesa, and Stephanie A. Bartone, Levi & Korsinsky LLP, Stamford, Connecticut; Thomas J. McKenna and Gregory M. Egleston, Gainey McKenna & Egleston, New York, New York; Michael S. Agruss, Agruss Law Firm LLC, Chicago, Illinois; Thomas A. Zimmerman Jr. and Amelia S. Newton, Zimmerman Law Offices P.C., Chicago, Illinois; Scott D. Egleston, Scott Egleston P.A., Miami, Florida; Zachary West, The Berman Law Group, Boca Raton, Florida; Cullin O'Brien, Cullin O'Brien Law P.A., Fort Lauderdale, Florida; Paul Kent Bramlett, Bramlett Law Offices, Nashville, Tennessee; Sandesh K. Viswanath, SKV Law Firm PLC, Southfield, Michigan; Leon Greenberg, Las Vegas, Nevada; Nelson Robles Diaz, Nelson Robles-Diaz Law Offices P.S.C., San Juan, Puerto Rico; T. Ryan Langley, Hodge & Langley Law Firm P.C., Spartanburg,

South Carolina; Buddy S. Perry, Winchester, Tennessee; Eric M. Albritton, Anthony K. Bruster, and Shawn A. Latchford, Albritton Law Firm, Longview, Texas; Marcus R. Spagnoletti, Spagnoletti & Co., Houston, Texas; Edgardo M. Lopez, J. Flores Valdez, and Marlon B. Baldomero, Filipino Law Group, Los Angeles, California; for Plaintiffs-Appellants.

Mark G. Tratos (argued), Greenberg Traurig LLP, Las Vegas, Nevada; Ruth A. Bahe-Jachna, Greenberg Traurig LLP, Chicago, Illinois; for Defendants-Appellees Floyd Mayweather and Mayweather Promotions LLC.

Daniel M. Petrocelli (argued), Jeffrey A. Barker, David Marroso, and Esteban Rodriguez, O'Melveny & Myers LLP, Los Angeles, California, for Defendants-Appellees Emmanuel Pacquiao, Top Rank Inc., Robert Arum, Michael Koncz, Todd DuBoef, and Home Box Office Inc.

**OPINION**

NGUYEN, Circuit Judge:

"The thrill of victory. The agony of defeat. The human drama of athletic competition."[1] Jim McKay's famous phrase captures not only the excitement but also the uncertainty of competitive sports for athletes and fans alike. On any given day, an underdog may defeat a champion, and a highly anticipated match may end up a total bust. In the world of boxing, facing 42-1 odds, James "Buster" Douglas achieved the unthinkable when he knocked out Mike Tyson, a world heavyweight champion who entered the ring 37-0

---

[1] *Wide World of Sports* (ABC television broadcast 1961).

with 33 knockouts.  And the "Fight of the Century" between world-champion boxers Emmanuel "Manny" Pacquiao and Floyd Mayweather, Jr. turned out to be a "yawner," which prompted this lawsuit.

Pacquiao and Mayweather squared off at the MGM Grand Garden Arena in Las Vegas on May 2, 2015.  After twelve rounds, Mayweather was declared the winner against "underdog" Pacquiao in a unanimous decision.  During the post-fight press conference, Pacquiao revealed that he had injured his right shoulder in training camp nearly a month before.  Plaintiffs in numerous jurisdictions seized on the injury disclosure and filed putative class-action complaints alleging that Pacquiao was "damaged goods," that the fight was a "magnificent con," and that they would not have purchased tickets had they known of Pacquiao's injury.  The district court dismissed the complaints in this multidistrict litigation on the ground that Plaintiffs have not suffered a cognizable legal injury because in short, they got what they paid for.  We affirm.

## I.

## BACKGROUND

### A.  Factual Background[2]

For several years before the long-awaited May 2, 2015 fight, Pacquiao, an eight-division world champion, and Mayweather, an undefeated, five-division world champion, were "considered as and reported to be the best 'pound-for-

---

[2] The factual allegations are drawn from the California Plaintiffs' Consolidated Amended Class Action Complaint.  The parties agree that the factual allegations are, for all relevant purposes, substantially identical across Plaintiffs' various complaints.

pound' fighters in recent history, if not ever, in the world." The two camps began exploring the possibility of a Mayweather-Pacquiao matchup as far back as 2009. In 2015, a preliminary agreement was reached, and Pacquiao, Mayweather, their teams, and Home Box Office, Inc. ("HBO," the fight broadcaster), began promoting the fight "as the biggest event in boxing history and the 'Fight of the Century.'"

On or about April 4, 2015, Pacquiao tore the rotator cuff in his right shoulder during a sparring session. As a result, Pacquiao "had to discontinue sparring sessions during his training camp" and sent one of his sparring partners home with instructions not to disclose his injury to anyone. Pacquiao and his team considered postponing the fight but decided to proceed after consultation with his doctors.

Despite the injury, Pacquiao's head trainer, Freddie Roach,[3] remarked to media outlets that "he had never seen Pacquiao in 'such pristine condition.'" Roach boasted that Pacquiao was in "top condition" and called him "a freak." Robert Arum, the founder, Chairman, CEO, and Treasurer of Top Rank, Inc. ("Top Rank"), Pacquiao's promotional company, publicly declared that Pacquiao is "better than I've ever seen him," is "super confident and super relaxed," and that "[y]ou're going to see the best Manny." In an interview with the *Los Angeles Times*, Roach stated that Pacquiao was training "with only his left arm" in order to "to sharpen the use of [his] 'deadly' left punch and to help him improve his footwork so he could cut off the ring against the 'elusive' Mayweather." Roach also stated that Pacquiao "could beat [Mayweather] with his right arm tied behind his back." And during a press conference, Roach stated that Pacquiao "is in

---

[3] Roach is not a party to this case.

great shape," that he "had a great training camp," and that he "is ready to go."  Pacquiao also said during that press conference that he was feeling "good, very good."

Tickets to the fight went on sale on April 23, 2015, and sold out within minutes, commanding prices ranging from $1,500 to more than $7,500 per seat in the MGM Grand Garden Arena.  On the secondary market, single tickets sold for as much as $231,000.  Pay-per-view ("PPV") access to the fight "broke the record for the most expensive boxing [PPV] event in history," with commercial subscribers paying up to $10,000 to show the fight at their establishments.

On May 1, 2015, the day before the fight, Pacquiao and Michael Koncz, Pacquiao's personal advisor, completed a Nevada State Athletic Commission ("NSAC") pre-fight medical questionnaire under penalty of perjury.  Pacquiao represented on the questionnaire that he had not suffered any injury or serious medical condition of any kind.  Three hours before the fight, however, a Top Rank employee informed the NSAC for the first time of Pacquiao's shoulder injury and asked that Pacquiao be allowed to receive a pre-fight injection of an anti-inflammatory pain medication.  The NSAC denied the treatment request because Pacquiao had not disclosed his injury on the questionnaire or in an otherwise timely manner.  Ultimately, the NSAC physicians medically cleared Pacquiao to enter the ring.

After twelve rounds, each of the three judges declared Pacquiao the winner of between two and four rounds and Mayweather the overall winner of the match by unanimous decision.  According to the *Los Angeles Times*, the fight was "a yawner involving damaged goods."  After the fight, Pacquiao, Arum, and Roach all stated publicly, for the first time, that they had known of Pacquiao's shoulder injury for at least two weeks.  Pacquiao also stated that he was "not

really 100%'' during the fight as a result of the injury.  On May 5, 2015, Pacquiao and Top Rank issued a statement on Top Rank's website confirming that Pacquiao had suffered an injury to his right shoulder but had decided to proceed with the fight "[w]ith the advice of his doctors."

Plaintiffs allege that Defendants knew of the injury before the fight.[4]  In addition to Pacquiao's camp, the Mayweather Defendants allegedly knew because they had a "mole" in Pacquiao's training camp, and HBO knew, or should have known, because it produced a documentary, "*Mayweather / Pacquiao: At Last*," which followed Pacquiao's training leading up to the fight.  Plaintiffs contend that Defendants' failure to reveal Pacquiao's injury was deceptive and misleading, which deprived the public of the ability to "make an informed purchasing decision . . . based on all material facts."  They claim that they would not have purchased their tickets, PPV, or closed-circuit distribution packages if Defendants had not made "misleading . . . statements related to" or omitted material information regarding Pacquiao's physical condition.  Plaintiffs contend that the public "would naturally believe— as they had been led to believe—that they were purchasing the right to see a contest between highly-conditioned, healthy athletes in peak physical condition and not suffering from any disability or serious injury."

---

[4] There are three sets of defendants in this case.  The "Pacquiao Defendants" include Pacquiao, Top Rank, Arum, Koncz, and Todd DuBoef, the President of Top Rank.  The "Mayweather Defendants" include Mayweather and Mayweather Promotions LLC.  Plaintiffs also name HBO as a defendant in this case.  The Pacquiao Defendants, Mayweather Defendants, and HBO are collectively referred to as "Defendants."

## B.  Procedural History

Plaintiffs filed putative class action complaints in numerous jurisdictions against the Pacquiao Defendants, the Mayweather Defendants, and HBO.  On August 17, 2015, the United States Judicial Panel on Multidistrict Litigation created an MDL and issued a transfer order under 28 U.S.C. § 1407 to centralize pretrial proceedings in the Central District of California.  On February 22, 2016, Plaintiffs filed sixteen consolidated class-action complaints.  The district court accepted these complaints as filed on July 7, 2016.  At the time the district court ruled on the motions to dismiss, the MDL consisted of 26 individual actions, 13 jurisdiction-specific complaints filed on behalf of putative classes of PPV purchasers, a single complaint filed on behalf of a nationwide putative class of ticket holders, and a single complaint filed on behalf of a nationwide putative class, including California and New York subclasses, of commercial entities that purchased closed-circuit distribution rights to televise the fight.

On August 25, 2017, the district court dismissed all complaints with prejudice.  The district court held that Plaintiffs suffered no cognizable injury to a legally protected interest because "the alleged misrepresentations and omissions implicate the core of athletic competition" as opposed to "business outcomes and financial performance." Plaintiffs timely appealed.

## II.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291.  We review "dismissals for failure to state a claim under Rule 12(b)(6)" de novo.  *McKesson HBOC, Inc. v. N.Y. State*

*Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003).

## III.

## DISCUSSION

Because our circuit has not considered the rights of a spectator disappointed by a sporting event, we begin by reviewing existing case law for guidance before turning to the allegations in this case.

### A.

### 1.

A majority of courts that have considered claims brought by dissatisfied sports fans follow what is known as the "license approach."  Under that approach, a ticket holder enjoys only the right to view the ticketed event, and therefore no cognizable injury arises simply because the event did not meet fan expectations.

Two of our sister circuits have upheld the dismissal, for failure to state a claim, of complaints filed by unhappy spectators.  In *Bowers v. Fédération Internationale de l'Automobile*, Formula One race attendees filed a putative class action seeking the return of their expenses because, of the twenty cars that were expected to race, fourteen withdrew due to tire problems.  489 F.3d 316, 319 (7th Cir. 2007).  The Seventh Circuit affirmed the dismissal of the action for failure to state a claim on which relief could be granted.  Analyzing the plaintiffs' breach-of- contract claim, the court observed that "most states agree that the seller contracts only to admit the plaintiff to its property at a given time," not "to provide the spectacle."  *Id*. at 321.  Thus, the

seller agrees "only to license the plaintiff to enter and 'view whatever event transpire[s].'"  *Id.* (alteration in original) (quoting *Castillo v. Tyson*, 701 N.Y.S.2d 423, 425 ((N.Y. App. Div. 2000)).  Ultimately, the court rested its holding on narrower grounds, stating that even assuming the plaintiffs possessed "a contractual right to a regulation Formula One race (and further assuming a right to have the race stewards properly interpret the applicable regulations on the spot), they got such a race here."  *Id.*  The court explained its rationale:

> [W]hile every competitive sport is built around the presumption that the players will try hard to win, a contest is not invalidated by a player's poor effort.  A team cannot claim that a loss does not count because one of its members was dogging it.  And once it is established that the plaintiffs received a regulation race, they admit that they had no additional right to a race that was *exciting* or drivers that competed *well*.

*Id.* at 322.  Because the Formula One racing regulations do not impose a "minimum car" requirement, and there was "no reason to claim . . . that no race occurred," dismissal was appropriate.  *Id.*

Similarly, in *Mayer v. Belichick*, the Third Circuit affirmed the dismissal of a putative class action brought by a season ticket holder against the New England Patriots in response to the scandal known as "Spygate."  605 F.3d 223, 225 (3d Cir. 2010).  The plaintiff asserted contract and tort claims, including fraud, alleging that during a game against the New York Jets, the Patriots surreptitiously videotaped their opponents' sideline signals to use that information to

their strategic advantage later in the season.  This conduct allegedly violated the "rights of New York Jets ticket-holders who fully anticipated and contracted for a ticket to observe an honest match played in compliance with all laws, regulations and NFL rules."  *Id.*

The Third Circuit framed the dispositive question as whether the plaintiff "stated an actionable injury (or, in other words, a legally protected right or interest)" arising out of the challenged conduct.  *Id.* at 231.  It then held that the plaintiff "possessed either a license or, at best, a contractual right to enter Giants Stadium and to have a seat from which to watch a professional football game," but nothing more. *Id.* at 236.  Because there was no allegation that this right had been injured in any way, the plaintiff had "suffered no cognizable injury to a legally protected right or interest."  *Id.*; *see also id.* ("Here, [the plaintiff] undeniably saw *football* games played by two *NFL* teams.  This therefore is not a case where, for example, the game or games were cancelled, strike replacement players were used, or the professional football teams themselves did something nonsensical or absurd, such as deciding to play basketball.").

Most state courts have adopted a similar approach.  *See id.* at 231 (observing that the license approach "has, for some time, been followed throughout the United States and in other common law jurisdictions throughout the world").  For example, in *Castillo v. Tyson*, an appellate division of a New York state court affirmed the dismissal of putative class claims, including fraud, arising out of Mike Tyson's infamous fight with Evander Holyfield in which Tyson was disqualified for biting off part of Holyfield's ear. 701 N.Y.S.2d 423 (N.Y. App. Div. 2000).  The plaintiffs argued that Tyson's disqualification interfered with their right to "view a 'legitimate heavyweight title fight' fought

'in accordance with the applicable rules and regulations' of the governing boxing commission." *Id.* at 424. *Castillo* rejected this argument, reasoning that disqualification is "a possibility that a fight fan can reasonably expect," and the defendants' public statements "predicting a 'sensational victory' and the 'biggest fight of all time'" did not negate this possibility. *Id.* at 424–25. Although *Castillo* does not discuss the license approach, the dismissal was premised on the ground "that plaintiffs received what they paid for, namely, the right to view whatever event transpired." *Id.* at 425 (internal quotation marks omitted).

Most recently, the Louisiana Supreme Court held in *Le Mon v. National Football League* that season ticket holders had no "right of action" to challenge a referee's missed call during the 2019 NFC Championship game between the New Orleans Saints and the Los Angeles Rams. 277 So. 3d 1166, 1167–68 & n.3 (La. 2019). Adopting the license approach, the court concluded that the "plaintiffs' purchase of a ticket merely granted them the right of entry and a seat at the game." *Id.* at 1168. Because the alleged missed call by the referee in no way interfered with these rights, dismissal of the plaintiffs' fraud and deceptive trade practices claims was warranted. *Le Mon* reasoned more generally that "public policy considerations weigh in favor of restricting the rights of spectators to bring actions based on the conduct of officials of professional sporting leagues." *Id.* (concluding that "the courts are not the proper forum to litigate such disputes").

**2.**

Plaintiffs acknowledge the weight of authority against them, but characterize themselves as "defrauded consumers" who have suffered a legally cognizable injury rather than "mere 'disappointed' sports fans." In support of this

argument, Plaintiffs primarily rely on a different line of cases brought by season ticket holders.  *See Charpentier v. L.A. Rams Football Co.*, 89 Cal. Rptr. 2d 115 (Ct. App. 1999); *Beder v. Cleveland Browns, Inc.*, 717 N.E.2d 716 (Ohio Ct. App. 1998); *Skalbania v. Simmons*, 443 N.E.2d 352 (Ind. Ct. App. 1982).

In *Charpentier*, a season ticket holder brought a putative class action alleging that the Rams falsely represented that they had no plans to leave Anaheim, which inflated the sale of season tickets.  89 Cal. Rptr. 2d at 117–18.  The plaintiff claimed that he was injured when he purchased tickets for the 1994 season because he sought to reserve the location of his season tickets for future years when the Rams would be a better team.  *Id.* at 118.  The California Court of Appeal affirmed the dismissal of some of the plaintiff's claims but allowed the fraud claim to proceed.  *Id.* at 122–23.  The court reasoned that season ticket holders may well have elected not to purchase season tickets for a losing team had they known that the team would be moving out of state and that they would be unable to renew their tickets for future seasons.  *Id.* at 123.

Plaintiffs also cite *Beder*, in which triable issues of material fact precluded entering summary judgment on a fraud claim brought by season ticket holders.  717 N.E.2d at 722–23.  There, ticket holders challenged the Brown's move from Cleveland to Baltimore after the team's owner falsely stated that he would not move the team.  *Id.* at 718, 722; *cf. Skalbania*, 443 N.E.2d at 359–60 (suggesting, in considering a class certification order, that season ticket holders may have viable fraud claims against a professional hockey team that closed down less than halfway through its season after inducing season ticket purchases by falsely representing that

the "tickets were good for a full season of . . . league competition").

## B.

Turning now to this case, we first address Plaintiffs' argument that, like the season ticket holders in *Charpentier* and *Beder*, they have alleged a cognizable claim because they would not have purchased tickets to the fight but for Defendants' misrepresentations. We do not find the season ticket-holder cases to have much persuasive value here. Importantly, the claims asserted in those cases were not premised on an athlete's performance on the tracks, on the field, or in the ring. Fans of the Rams and the Browns purchased season tickets with the reasonable expectation that the games would be played in a certain location, *Beder*, 717 N.E.2d at 718, or that they would be able to renew their reserved-seat locations for the upcoming season, *Charpentier*, 89 Cal. Rptr. 2d at 117. Here, although boxing fans—like all sports fans—can reasonably expect a regulation match, they also reasonably anticipate a measure of unpredictability that makes spectator sports exciting.

Plaintiffs in this case paid to see a boxing match between two of the top fighters in the world, Mayweather and Pacquiao. Each was medically cleared to fight by NSAC physicians before he entered the ring. Ultimately, a three-judge panel declared Mayweather the overall winner of the match, but each of the judges declared Pacquiao the winner of between two and four rounds.[5] And although the match

---

[5] *Official Scorecard: Floyd Mayweather v. Manny Pacquiao*, Nev. State Athletic Comm'n (May 2, 2015), http://boxing.nv.gov/uploadedFi les/boxingnvgov/content/home/features/Corrected_May-v-Pac_scoreca rd-tickets.pdf.

may have lacked the drama worthy of the pre-fight hype, Pacquiao's shoulder condition did not prevent him from going the full twelve rounds, the maximum number permitted for professional boxing contests.  *See ABC Regulatory Guidelines*, Ass'n of Boxing Comm'ns and Combative Sports (July 27, 2005), https://www.abcboxing. com/abc-regulatory-guidelines/.       Plaintiffs   therefore essentially got what they paid for—a full-length regulation fight between these two boxing legends.

Even though the license approach may not map perfectly onto the allegations in this case,[6] we need not adopt that approach to conclude that Plaintiffs suffered no legally cognizable injury here.  Whatever subjective expectations Plaintiffs had before the match did not negate the very real possibility that the match would not, for one reason or another, live up to those expectations.[7]

---

[6] Plaintiffs incorrectly characterize the license approach cases as "mak[ing] clear that the license approach has no application" to fraud claims.  In fact, fraud claims were also asserted in numerous license approach cases, and no court that has adopted that approach has allowed claims that sound in tort to proceed.  *See Mayer*, 605 F.3d at 228, 230 (affirming dismissal of common law and statutory fraud claims because the plaintiff "failed to set forth a legally cognizable right, interest, or injury"); *Castillo*, 701 N.Y.S.2d at 424–25 (affirming dismissal of fraud claim for failure to state a claim); *Le Mon*, 277 So. 3d at 1168 (same).

[7] This point is underscored by the nature of the statements Defendants made about Pacquiao's physical condition in advance of the match.  Each was akin to puffery, which is generally not actionable.  *See Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (affirming dismissal of fraud and negligent misrepresentation claims premised on "generalized, vague and unspecified assertions" because they "constitut[ed] mere 'puffery' upon which a reasonable consumer could not rely").  Although Pacquiao responded "No" to a question in the NSAC pre-fight medical questionnaire asking whether he

As the Seventh Circuit explained in *Bowers*, Formula One racing fans expect that, on any given day, numerous events may prevent a competition with a full complement of twenty cars.  *See* 489 F.3d at 324 (describing "dangerous track conditions, a driver's sudden illness, an accident in shipping a car to the track, any number of things, including the possibility that, for some reason, a driver might refuse to race" as factors that might result in a competition involving fewer cars).  In boxing, too, many factors may prevent a full-length match, or one that is as exciting as fans hope.  A boxer might, for example, tear a muscle or foul out in the first round.  Or a referee might inadvertently come between the boxers, preventing one from landing a knockout punch.  As in *Bowers*, these are all possibilities that boxing fans can expect.  *See Castillo*, 701 N.Y.S.2d at 424 (describing disqualification as "a possibility that a fight fan can reasonably expect").

We find unpersuasive Plaintiffs' remaining argument that their claims "are no different than claims alleging fraudulent inducement to procure sales of any other goods or service."  In a typical consumer-protection case, consumers form beliefs about what they can expect by relying on public representations regarding the features of the good or service at issue.  An advertisement that states that a certain model of a car is equipped with a sunroof and an in-dash navigation system, for example, gives rise to the reasonable expectation that the model in fact has both features.  If the car lacks one or both, consumers might bring suit, alleging that they were

---

"had any injury to [his] shoulders . . . that needed evaluation or examination," that questionnaire was not made available to the public before the match.  Accordingly, Plaintiffs could not have relied on it.

injured because the advertisements misrepresented the car's features.

These principles do not apply with equal force to claims brought by fans in the sports context. A sports match or game, unlike a consumer good or service, is defined only by a set of rules that are well-known to fans; the rest is determined by how the match is fought or the game is played. *Cf. Bowers*, 489 F.3d at 321 (characterizing a Formula One race as a "spectacle" that depends on "the performers and their scheduled performance"). Nor can it be said that fan expectations are uniform: a move or play that exceeds one fan's expectations disappoints the next. *See Mayer*, 605 F.3d at 235 n.4 (observing that various cases have recognized "the absence of a cause of action arising out of bad performance or, more generally, the subjective expectations of the ticket-holders"). The "human drama of athletic competition"[8] distinguishes this case from the garden-variety consumer protection cases.

We note also that in seeking to hold Defendants liable for alleged omissions and misrepresentations regarding Pacquiao's physical condition, Plaintiffs' theory of liability is potentially boundless. The nature of competitive sports is such that athletes commonly compete—and sometimes dramatically win—despite some degree of physical pain and injury.[9] Taken to its logical extreme, Plaintiffs' theory

---

[8] *Wide World of Sports* (1961).

[9] In the 1996 Olympics, for example, Kerri Strug helped U.S. Women's Gymnastics win its first Olympic gold medal in the team event by landing her vault with an injured ankle. Johnette Howard, *True Grit: In a Dramatic Finish, the U.S. Women Nailed Russia for the Team Gold*, Sports Illustrated (July 24, 1996), https://www.si.com/vault/1996/07/24 /216315/us-women-gymnastics-gold-1996-olympics-atlanta-kerri-strug.

would require all professional athletes to affirmatively disclose *any* injury—no matter how minor—or risk a slew of lawsuits from disappointed fans.  Such a result would fundamentally alter the nature of competitive sports: Opponents would undoubtedly use such information to their strategic advantage, resulting in fewer games and matches won through fair play, and gone would be the days of athletes publicly declaring their strength and readiness for fear of a lawsuit alleging that fans were misled.

Plaintiffs' theory of liability also presents serious workability problems.  Would athletes be required to make an affirmative disclosure regarding any discomfort they felt, or only with respect to diagnosed injuries?  Would it matter whether a diagnosed injury caused an athlete no pain?  And how far in advance of a game or match would such disclosures be required?

As the Third Circuit explained in *Mayer*:

> At the very least, a ruling in favor of [the aggrieved ticket holder] could lead to other disappointed fans filing lawsuits because of "a blown call" that apparently caused their team to lose or any number of allegedly improper acts committed by teams, coaches, players, referees and umpires, and others. This Court refuses to countenance a course of action that would only further burden already

---

And Curt Schilling led the Boston Red Sox to a victory in Game 6 of the 2004 American League Championship Series with a torn tendon, an important step toward the team's first World Series victory in 86 years. Ian Browne, *Schilling's Bloody Sock the Bridge to History*, MLB News (Oct. 19, 2014), https://www.mlb.com/news/curt-schillings-bloody-sock-the-bridge-to-history/c-98978666.

> limited judicial resources and force professional sports organizations and related individuals to expend money, time, and resources to defend against such litigation.

605 F.3d at 237.

Like the racing fans in *Bowers* who saw only six out of the twenty cars that were expected to race, or the boxing fans in *Castillo* who witnessed Tyson's shameful disqualification for biting off part of his opponent's ear, Plaintiffs here have no cognizable claim arising out of a performance by Pacquiao that fell short of viewer expectations.[10]  *See Bowers*, 489 F.3d at 322 ("[O]nce it is established that the plaintiffs received a regulation race, they . . . had no additional right to a race that was *exciting* or drivers that competed *well*."); *Castillo*, 701 N.Y.S.2d at 425 (concluding that the "plaintiffs received what they paid for, namely, the right to view whatever event transpired" (internal quotation marks omitted)).

---

[10] Our ruling does not leave Plaintiffs without any recourse, *see Mayer*, 605 F.3d at 236–37, as Plaintiffs are free not to support the NSAC, Mayweather, Pacquiao, their promotional teams, or HBO.  *See Seko Air Freight, Inc. v. Transworld Sys., Inc.*, 22 F.3d 773, 774 (7th Cir. 1994) (noting that although a disappointing performance by the Chicago Cubs does not entitle a season ticket holder to a refund, a ticket holder retains the ability to "head south for Comiskey Park and the White Sox" in lieu of Wrigley Field); *Bowers v. Fédération Internationale de l'Automobile*, 461 F. Supp. 2d 855, 862 (S.D. Ind. 2006) ("Any further grievance or disgruntlement on the part of Plaintiffs must be pursued, if at all, in the marketplace, through fan withdrawal of money and attendance at future race events."), *aff'd*, 489 F.3d 316 (7th Cir. 2007).

The district court was therefore correct to knock out Plaintiffs' complaints.

**AFFIRMED.**